The opinion of the court was delivered by
Tilghman, C. J.
(after stating the special verdict and judgment of the court below.) it is of the essence of iarceny that the taking be invito domino, without the will of the owner. Fost. 123. 4 Bl. Com. 230. 2 East, C. L. 665. The ancient known definition of larceny, says Foster, is fraudulenta obtrectatio rei alíense invito domino. Fost. 124. The question is, then, whether the defendant took and carried away the goods of the prosecutors against their will? To a person unacquainted with legal subtleties, it would seem strange to make it a question whether, after a sale and deliyery of goods, and a receipt given for the price of them, the vendee could be said to take them away against the will of the vendor? The argument on behalf of the prosecution is, that the consent of the vendors was fraudulently obtained, and therefore, in law, it was no consent; and the defendant', having from the beginning an intent to get possession.of, and'carry away the property without paying for it', was guilty of larceny. The consequence of this principle has such an important bearing on society, that it must be well considered before it is adopted. The cases in favour of it in the English courts, if any such there be, are since the American Revolution (4th July, 1776,) and therefore no authority here. But although our legislature has forbid the citing of such cases in our courts, yet it was never so unwise or so illiberal, as to wish to restrain the judges from deriving useful information from the opinions of learned foreigners of all nations. I have, therefore, had the curiosity to run through the English decisions on questions similar to that before us, and it really appears to me that their judges have so entangled themselves in the nicety and minuteness of their distinctions, that their best elementary writers are unable to reconcile the adjudged cases: and'this must ever happen, when courts of justice endeavour to provide remedies which should be left to the legislature. This error has often been fallen into by men of the first talent and strictest integrity. Indignation is naturally excited by acts of flagrant villainy, and a judge thinks himself justified in taking one step beyond the line to come at the of *97 fender. But this step is not easily retraced; the case is urged on him as a precedent, and a new principle, once established, leads to so many unforeseen consequences, that at length the court endeavour to escape from them by distinctions too nice for comprehension; and thus the law becomes confused and uncertain—an evil always to be deprecated, but particularly in criminal cases. So much for the progress of the English law, since our revolution. But there are adjudications, prior to that period, which are authority, and by which, unless manifestly wrong, we have always held ourselves bound.
It was a principle of the common law in the earliest times, that its provisions were not to be evaded by fraud and artifice. A memorable example of this was given in a case in the 13th Edw. 4, mentioned by Kelyng in his Reports of Pleas of the Crown, 81, 82. One bargained with another to carry some packs of goods to Southampton, and delivered the goods to him. The carrier took them to another place, and there opened the packs, and took the goods, and disposed of them to his own use. The case being one of-difficulty, was referred by the king and council to all the judges in the Exchequer Chamber, who resolved it to be felony. The reason of this decision was, says Kelyng, hecause the carrier’s subsequent act of carrying the goods t.o another place, and then opening them and disposing of them to his own use, “ deplareth the intent originally was, not to take the goods upon the agreement and contract of the party, but only with a design of stealing them.” -This case has been often cited, and always held for law. And it has been said that if the carrier had not broken the packages, but disposed of them entire of his own use, it would not have been felony. The reason of this distinction is very refined, ,but shows the anxiety of the judges that a breach of trust should not be construed into a felony. They would suffer nothing short of an opening of the packages to be sufficient evidences of such a fraudulent original intention, as would constitute a felony. And it has never been denied, that if the original intention of the carrier had been to take the goods upon .the trust intended by the owner, and he had afterwards changed his mind, and converted them to his own use, it would have been but a breach of trust, and no felony. Kelyng mentions also another case of an unsuccessful fraudulent attempt to evade the law in á capital case. Some persons, under pretence of robbery, raised a hue and cry, and called a constable to search a house in the night timé, and,the constable coming, the owner of the house opened the door, and then, those-persons bound the constable; and those in the house, and robbed them. This was burglary, because they procured the door to be opened to them in the night by fraud. There are other ancient authorities, establishing the principle, that if the owner of goods parts with the possession for a particular purpose, and the person who receives possession, avowedly for that purpose, -has a fraud *98 ulent intention to make use of the possession as the means of converting the goods to his own use, and does so convert them, it is felony.
Such was Ckissers’s case', reported in T. Raymond, 275. 2 East, C. L. 275. Chissers asked the price of, some cravats in a shop, the owner told him the price was seven shillings, and handed them to him to look at; Chissers took the cravats, offered three shillings, and then ran away with them: this was felony.—Tunnard’s case was determined in 1722, and cited from a M. S. note, 2 East, 687. Tunnard borrowed a mare from Smith, to ride three miles; but, instead of three miles, he rode from the Isle of Ely to London, and there sold her. Lord Raymond left it to the jury to decide whether Tunnard took possession of the mare with the original intent to ride her only three miles, and then return her, or to steal her.- The jury were of opinion that the intent was to steal, and it was held to be felony. Now, in all these cases, and others which it is unnecessary to mention, the owner of the goods had no intent to part with the property, but only the possession for a particular purpose; so that when the felon, pretending to receive them for the same purpose, harboured the secret design of stealing them, it has not been thought straining the law too far, to say that a possession thus fraudulently obtained was void, and the legal possession remained in the owner.
But when the owner intended to part with the property, the case is different. For although fraudulent means may have been used to induce him to part with it, yet he delivered the possession absolutely, and the purchaser received the possession for the express purpose of doing with the goods what he pleased. The owner was not deceived by the manuer in which possession was taken. It was his intent that the possession should never return to him. Therefore it was a case of cheat, and not of felony. I find it laid down by East, a writer on criminal law of respectable character, “ that if the owner parts with the properly, by whatever fraudulent means he was induced to give credit, it is not felony7.” I have seen no judicial decision, which is authority in this court, carrying the doctrine of what may be called constructive larceny, beyond the case where possession only was intended to be delivered.
And I am for stopping there, because we have a line distinctly marked, which is of great importance in criminal law. If it be said that it is equally criminal to prevail on the owner to part with the property by fraud and falsehood; I answer, that granting it to be so, it is not for the court to punish actions according to the degree of immorality. That is the province of the legislature. There is an insuperable objection to the extension of the law by courts of justice. What they decide must be taken to have been law before their decision; so that a man may be, in effect, punished by an. ex post facto law. Whereas the legislature takes care, when it creates an offence, to confine it to subsequent actions. I confess *99 my own opinion is, that the law of felony has been pushed quite far enough, by the adjudged cases on possession fraudulently obtained. I am alarmed at the consequences of the principles now contended for. The argument is, that a fraudulent contract is void; therefore the property never passed from- the owner; and as the property draws to itself the legal possession, the possession never passed from him, in contemplation of law. Let us see to what this may lead. A man, in contemplation of insolvency, purchases goods with an intention never to pay for them. Here is a fraud; is it therefore to be a larceny? Or suppose a man purchases goods, and makes payment in a bill of exchange which he knows will not be honoured—that too is a fraud. Is it a larceny? Again, a man purchases goods, and pays for them, and, on examination, finds them to be damaged, he offers to return them, and rescind the contract, on the principle of the seller’s having known them to be damaged when they were sold. Perhaps he may be able to make this out to the satisfaction of a jury, and thus avoid the contract. Is it to be said, in that case, that the seller had an original intent to defraud the buyer of his money, and was therefore guilty of larceny? No, will be the immediate answer of the counsel for the commonwealth, and there is no danger of any man’s being improperly convicted of felony, because the jury are to decide whether the intention was felonious. But juries have sometimes their passions and their prejudices. There are times when the public mind is strongly excited, and juries are hurried away by the common feeling. A man is thrown into a tremendous uncertainty, who has nothing to trust to, but the opinion' which a jury may Jform of his secret intention; a matter, of .which, after all, they can have no positive or certain knowledge. All cheating is immoral, but its degrees of guilt are very different. Let the legislature, if it thinks proper,’ declare the offence, and prescribe the punishment. ‘ - ’ ,
Now to come to a conclusion;—the defendant in this case deceived the prosecutors most shamefully. But he did obtain their consent to an absolute sale, and the possession was delivered accordingly. There was no condition in the'case. When Davis and Oakford were imprudent enough to receive the defendant’s check, they knew that it was not money. But such as it was, they accepted it in payment, and went so far as to give cash for the amount by which it exceeded the price of the goods. I say not, whether the property passed legally to the defendant, or not; but it is beyond doubt, that Davis and Oakford intended to pass the property when they delivered the possession, and, therefore, it was not a case of larceny.
I am of opinion that the judgment of the Mayor’s Court should be reversed, and judgment entered for the plaintiff in error.
Judgment reversed.