# Continental Coal Cor. and R. Mattingly v. Cole's Admr.

(Decided October 7, 1913).

## Appeal from Bell Circuit Court.

1. Argument of Counsel—Improper But Not Hurtful.—The statements of appellee's counsel in argument to the jury to the effect that the map was so drawn as to show up the place of the accident in the most favorable light to appellant, were improper, but in view of tne fact that the map had been used through the trial by consent, prevented the statement complained of from being hurtful.

2. Jury—Selection of—Objection Too Late—Improper Selection—Section 2241 Ky. Stats.—Appellant's objection to the selection of the panel having been made thirty days after the trial, and which was filed as additional grounds for a new trial, came too late. It should have come before trial. While Bell County has two court houses by a general law, the statement of the court that in drawing from the wheel the commissioners might place those names drawn nearest Middlesboro on that list; and those living nearest Pineville on the Pineville list, while made for no other effect than to benefit the jurors, that method of selection was not authorized by Section 2241 of the Kentucky Statutes. (See 146 Ky., 821; 141 Ky., 107).

3. Verdict—Cannot Be Said to Be Disproportionate to Damage Sustained—Evidence.—In view of all the evidence it cannot be said that the amount of the verdict is so disproportionate to the damage sustained as to appear to have resulted from passion or prejudice.

LOGAN & BABBAGE for appellants.

B. B. GOLDEN, W. T. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This appeal is from a judgment of $20,000 against the appellants, recovered in behalf of appellee, in the Bell Circuit Court for the death of W. P. Cole, in appellants' mine.

This is the second appeal. The first one was from a judgment of $15,000, and was reversed for the sole reason that the appellant, Robert Mattingly, became drunk during the trial and was fined in the presence of the jury for contempt of court, and was sent to jail, and for that reason the coal company, the only solvent appellant, in the court's opinion did not have a fair trial.

The facts produced upon this the second trial were the same as on the first. (See 146 Ky., 821), and the same as on the trial of Hounschell's Administrator v.

the same coal company, the opinion in which case can be found in 141 Ky., 107. The facts are therein recited and are sufficient on this appeal.

The appellants ask a reversal of this judgment, and only present and argue three reasons why it should be vacated.

1. Because of improper argument by appellee's counsel in his concluding argument to the jury.

2. Because of improper and irregular selection of the jury which tried this case.

3. Because the verdict is excessive, so much so, that it appears at first blush to have been the result of passion and prejudice.

We now take these three reasons up in the order named and dispose of them.

1. It appears from the record that when D. B. Logan in closing his argument for the appellant stated in substance "that the facts in this case were not such as would subject defendant, Robert Mattingly, to indictment for criminal prosecution," appellee's counsel, B. B. Golden, in closing his argument to the jury referred to Logan's statement saying in substance, "that Robert Mattingly might be indicted and prosecuted criminally." To this statement defendant's counsel objected. The court admonished the jury by saying to them, "that this is merely an argument between Mr. Golden and Mr. Logan as to what the criminal law of this State is upon questions of this kind, and as to what that law is has nothing to do with this case and you will not consider it, but be governed alone by the evidence which the court has permitted you to hear, and the law as given you by the court."

Later in his argument Golden said in effect: "That the map which had been exhibited to the jury on this trial had not been proven to be a correct map of the mine; that the appellants had not seen fit to call the person who made the map and show by him whether it was an accurate and correct map and whether made to any scale and from an actual survey of the mine, or whether it was made by guess work or estimation, or whether it was a copy of some other map; that he presumed that it had been prepared by some engineer or employee of the appellant company, and that it was natural to presume that it was so drawn as to show up the place of the accident in question, and the places it

represented in the most favorable light to the appellants.''

Appellants' counsel objected to that argument, and the court overruled same, and exception was taken.

The first statement, if improper, was completely remedied by the action of the court. The second statement, counsel should not have made. It is true no witness proved the map as stated, but it seems that the map had been used all through the trial by consent, therefore, his remarks above stated were improper, but not hurtful.

2. In regard to the alleged improper selection of the jury, it was this; that the judge select three discreet housekeepers of the county as required by section 2241 of the Kentucky Statutes. (Bell County has two court houses by general law, one in Pineville and the other in Middlesboro.) The act in making Middlesboro another county seat or place to hold court said nothing as to how the jurors should be obtained at that place. The court assembled its jury commissioners at Middlesboro, and after swearing them, stated that they had to make two lists of jurors, one for that place and one for Pineville. This in our opinion was proper, but he continued in his statement and said to them, that they might, or might not, as they saw proper, as they drew from the wheel the names of the persons, place the names of those living nearest Middlesboro on the Middlesboro list, and those living nearest Pineville on the Pineville list. This had the effect of causing them to make the list in that manner.

This statement of the court had the effect, and was made for the convenience of the jurors, and it was made for no other purpose, but in our opinion the law did not authorize it, for section 2241 of the Statute declares:

They shall take the last returned assessor's book for the county, and from it shall carefully select from the intelligent, sober, discreet and impartial citizens, resident housekeepers in different portions of the county, over twenty-one years of age, the following number of names of such persons, to-wit.''

And they shall deposit the persons' names in the wheel, and after drawing the grand jury, and shaking the wheel, they shall take a certain number of names and compose a petit jury, and record same upon paper *as* drawn, etc.

The statute clearly means that one list shall be made from the names drawn from the wheel in full before the other is begun, and if this motion to discharge panel had been made in time, it would have been available. In the case of L., H. & St. L. R. R. Co. v. Schwab, 31 Ky. L. R., 1313, the motion was made before the trial, and in that case the court referred to case of Kentucky Asylum for the Insane v. Hauns, 21 Ky. L. R., 22, and said that the case was not in point, nor is it in conflict with the authorities cited. Their objection to the manner in which the jury was selected was not made until after the trial was completed, and hence came too late to be available. (25 Ky. L. R., 2292.) In that case the objection to impaneling the jury was made upon calling the case for trial, and the motion was to discharge the whole panel of the jury for the irregularity in drawing them.

In the case of Eichman's Committee v. South Cov. & Cin. Street Ry. Co., 126 Ky., 519, it was called for trial on a certain day, and two of the jurors were excused and stood aside. The panel was filled and qualified and offered to the parties that they might exercise their peremptory challenges. Thereupon appellant for the first time interposed an objection to the entire panel upon the ground that it had not been selected in accordance with the provisions of the act of 1906, and the court at the close of the opinion used this language:

"We will add, lest a failure to do so might be misconstrued into approval of the practice, that the objection to the panel came too late, in any event. Challenges to the panel should precede poll challenges. Unless seasonably made, the objections to the panel, as well as to the polls, are deemed to have been waived."

In the case at bar, appellants' objection to the panel was made thirty days after the trial, and which was filed as additional grounds. This was too late. The objection should have been made before the trial.

3. On the last proposition, excessive damages, we cannot do better than by adopting the language of the court below:

"It is true that the verdict is large, but the rule in this State seems to be that a reversal will not be granted unless the verdict is glaringly excessive, and appears at first blush to have resulted from passion or prejudice, or so glaringly disproportioned to the damage as to appear at first blush to have resulted from passion or prejudice."

The trial of this case was quiet and orderly, and there were but few objections or exceptions to the introduction or rejection of the testimony, and the trial was rather a short one for cases of this nature. There was absolutely nothing in the trial from the time it started until it closed to indicate any feeling of passion or prejudice, unless it can be said that the amount of the verdict indicated such. It is true that a jury returned a verdict for $3,000 upon substantially the same evidence in the case of Hounschell's Administrator against these defendants, but it is well known that in estimating damages in cases of this kind, different juries will arrive at different results. The evidence shows that the deceased was a young man in good health, industrious, with one or more years experience as a miner, and had an expectancy of more than 29 years.

In view of all the evidence the court is not inclined to say that this sum is so disproportionate to the damage sustained as to appear at first blush to have resulted from passion or prejudice.

Nor can the court well say that the finding of $5,000 by way of exemplary damages is so glaringly excessive as to appear at first blush to have resulted from passion or prejudice. This is especially so in view of the testimoney of plaintiff as to the cause which brought about the death of plaintiff's intestate. The defendant's knew of the work going on in the new entry; knew blasting was being done there at irregular hours; knew it was dangerous to life to pass in or out of this new entry without notice or warning of the danger; knew that some of the employees were in the habit of passing in and out this way; knew that plaintiff's intestate and his companions were strangers in this mine and that they knew nothing about the danger in this new entry, or the danger attendant upon passing out that way. These facts are admitted by Mattingly, foreman of the defendant company. It is also admitted by defendant's foreman that prior to the accident, he and Anderson, who was blasting in the new entry, had talked about the danger of passing in or out by way of the new entry, and about stationing a guard there to warn persons of this danger. Now, if it be true, and the jury has so found, that the foreman of the defendant company, with all this knowledge, took or piloted the deceased and his companions to this new entry or near same, showed them how and directed them and caused them to go out that

way, and did this without notice or warning of the danger to their lives, then he sent them into a veritable death trap, and the negligence was so flagrantly gross as to justify large damages by way of punishment.''

This court in the case of Crosby, Etc. v. Bradley, &c., 11 Ky. L. R., 954, used this language:

''The court will not set aside a verdict for damages as excessive, unless it appears at first blush to have resulted from passion or prejudice; and the reasons for the court refusing to interfere with the verdict are much stronger where exemplary damages are allowed than where only compensatory damages may be given.''

The case of the L. & N. R. R. Co. v. Mitchell, 87 Ky., 327, was one where Mitchell lost a foot, and the court awarded him $10,000, and it was urged that the verdict was excessive, and the court said:

''The amount allowed seems large. It is so. The fact, however, that it appears high to us does not authororize a reversal. We are not acting as a jury, and it is only when it is glaringly excessive, and appears at first blush to have resulted from passion or prejudice, that we can interfere. The power should be sparingly exercised, and only in extreme cases. This is the policy of the law, and reasonably and necessarily so. It is difficult, indeed impossible, to measure with mathematical certainty the extent of some of the elements of compensatory damages. The law has confided the duty to the opinion of a jury as the best means of arriving at their extent even approximately, and every verdict should be regarded prima facie as the result of the exercise of an honest judgment upon their part. Any other rule would soon burden this court with numberless appeals upon this ground.

The evidence shows that the appellee has suffered beyond estimate. For weeks his life hung in the balance. He is a cripple for life; doomed to hobble about during the balance of his days, disabled from earning a living, at least at his accustomed employment, if not altogether, and in large measure deprived of the enjoyment of life. In estimating the damages for all this different minds may well arrive at different results; and in view of the well established rule upon this subject the verdict of the jury cannot be disturbed upon the ground that it is excessive.''

If the loss of a foot authorized a verdict of $10,000 for compensatory damages, how could it be said that the

loss of life of a young vigorous man was worth only $15,000?

In the case of the L. & N. R. R. Co. v. Engleman's Administratrix, 146 Ky., 19, this court said:

"Measured by the standard fixed by this court in some of its earlier opinions as compensation for the loss of a life negligently taken, it is possible that the sum awarded by the jury in this case might be looked upon as excessive; but in its recent decisions a much more liberal policy has been adopted, due, no doubt, to the increased cost of living and the diminished purchasing power of a dollar."

In the case of the I. C. R. R. Co. v. Stewart, 23 Ky. L. R., 637, Stewart was allowed $15,000, and the court in that case in passing upon the question used this language:

"While the verdict in this case is large, much larger than we would have allowed if the case had been submitted to us, the law has provided another forum for the assessment of damages in cases of this character; and where punitive damages may be allowed by the jury it is only in extreme cases where the damages are so excessive as to strike the mind at first blush as unreasonable that this court can interfere."

And further on in the same opinion, the court said:

"It is hard to measure the amount which should be given for such injuries, and in view of the length of the litigation and all the circumstances, we do not think a new trial should be granted on the ground that the verdict is excessive."

In the case of the L. & N. R. R. Co. v. Melton, 127 Ky., 290, Melton received personal injuries, and he recovered $22,000 and the verdict was permitted to stand.

In the case of the L. & N. R. R. Co. v. Setzer's Administrator, 149 Ky., 162, Setzer lost his life by negligence of the company, and he was first allowed to recover $30,000. The judgment was reversed and another trial had, and he recovered a judgment for $20,000, which upon appeal was affirmed. In that case punitive damages were allowed.

There cannot be a real distinction found in the case at bar from authority last cited, and while it is true that the verdict is large, upon viewing the whole case, we are compelled to affirm it, and, therefore, the judgment is affirmed.

Whole court sitting except Judge Hannah.