## Blakey v. Commonwealth.

(Decided March 7, 1919.)

### Appeal from Logan Circuit Court.

1. Perjury—False Swearing—Indictment—Negativing False Statement.—An indictment for false swearing must set out the statements alleged to have been made and then aver that the statements were false and were so known to be when made.

2. Perjury—False Swearing—Indictment—Sufficiency of.—It is only necessary that the alleged false statement should be negatived in such a way as to certainly inform the accused of the nature of the offense which is charged against him and when the indictment, after setting out the false statements, charges that they were wilfully corrupt and false and were so known to be when made, this is in substance the same as if the alleged false statements were negatived in so many words.

3. Perjury—False Swearing—Indictment—Sufficiency of Averment as to Matter Being Investigated.—It is not essential that the indictment should set out the specific matter being investigated by the grand jury at the time the alleged false testimony is given. It is only necessary that it should state facts showing that the matter being investigated related to a subject that the grand jury had jurisdiction to inquire into.

4. Indictment and Information—Sufficiency of.—Except in cases where some special technical averment is required an indictment will be good if it gives the accused full and accurate information of the charge against him in language so simple that a person of ordinary intelligence can understand the nature of the accusation.

5. Perjury—False Swearing—Evidence Sufficient to Convict.—The falsity of the statement may be shown by the evidence of living witnesses or by documentary or written evidence or by facts that clearly and convincingly establish it.

6. Perjury—False Swearing—Evidence Sufficient to Convict.—Where a person was indicted for falsely testifying that he had bought whiskey at a certain time and place from a named person and it was conclusively shown that the person from whom he said he bought the whiskey was at the time confined in a penitentiary, this evidence was sufficient to sustain a conviction for false swearing.

OSCAR M. SMITH and S. R. CREWDSON for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

At the May term, 1918, of the Logan circuit court the grand jury returned an indictment charging Blakey with the crime of false swearing, committed as follows:

"The said Blakey heretofore, within one year before the finding of this indictment, to-wit, on the.............. A. D. 19......, in the county aforesaid, did unlawfully, willfully, feloniously and knowingly swear, depose and give in evidence that which was untrue and false before the grand jury of Logan county, in an investigation judicially pending and before and being tried before said grand jury, which it had legal jurisdiction to try and authority to administer an oath, when the said Blakey was called as a witness, after being duly sworn by the foreman of the said grand jury, he did, falsely, willfully, knowingly and corruptly swear, depose and give in evidence that he had bought whiskey from Marvin Patey within the last past twelve months, in Logan county, Kentucky, wherein the local option law was in full force and effect. That when the said Blakey made said statements he knew that each and all of said statements were willful, corrupt and false. In fact and in truth the said Marvin Patey has been since about December, nineteen

hundred and fifteen, confined in the jail of Logan county, Kentucky, and from there sentenced to the penitentiary at Eddyville, Kentucky, and there departed this life; and that from his commitment to the aforesaid jail he was never released, but confined until a few hours before his death; and all of said facts were known to the said Blakey. All of which was so done as aforesaid and against the peace and dignity of the Commonwealth of Kentucky.''

On a trial under this indictment in February, 1919, Blakey was found guilty and his punishment fixed at confinement for one year in the state penitentiary.

On this appeal the grounds relied on for reversal are (1) that the indictment was defective and the general demurrer should have been sustained, (2) that the evidence was sufficient to sustain the verdict of conviction, and (3) that the instructions did not correctly submit the law of the case.

The objections urged to the indictment are, first, that it does not sufficiently negative the matter alleged to have been falsely stated in the testimony of Blakey before the grand jury, and second, that it does not charge the specific matter that the grand jury was investigating at the time the alleged false statement was made.

In support of the first objection the argument is that the indictment should have charged in so many words that Blakey had not in truth and in fact bought any whiskey from Marvin Patey and knew that the statement he made under oath that he had bought whiskey from Patey was willfully corrupt and false, instead of averring as it did that ''when the said Blakey made said statements he knew that each and all of them were corrupt and false.''

It is of course true that an indictment for false swearing must set out the statements alleged to have been made and then aver that the statements were false and were so known to be when made, but we do not regard it as indispensably necessary to the sufficiency of an indictment that in addition to this the indictment should set out that the accused had not done the thing he said he did do, describing it. This would be a mere repetition that in our opinion would add nothing to the definiteness or the clearness of the indictment. It is only necessary that the alleged false statement should be negatived in

such a way as to certainly inform the accused of the nature of the offense charged against him.

In Fisher, etc. v. Commonwealth, 152 Ky. 411, the indictment charged that they "did unlawfully, willfully and feloniously and falsely swear, and give in evidence after having been duly and legally sworn, 'certain statements wherein they denied that upon a certain occasion they had shot or discharged a deadly weapon upon a public highway;' and thereafter the indictment further alleges 'that the said evidence was false and untrue and known to the defendants to be false and untrue at the time they so gave it.'" And the court in commenting on the sufficiency of this indictment said: "There is and can be no pretense that appellants did not know what was intended to be charged against them by the allegations of this indictment. The parties to the indictment were specifically named, the offense with which they were charged stated, the venue was charged, and the particular circumstances under which the alleged false evidence was given set out, and these things under the provisions of our Criminal Code were sufficient."

It will be observed that the indictment in this case does charge "that when the said Blakey made said statements he knew that each and all of said statements were willfully corrupt and false," and we think that this was in substance the same as if the direct charge had been made that Blakey had not in fact bought any whiskey from Patey. If the statement that he had bought whiskey from Patey was willfully corrupt and false it would necessarily follow that he had not bought any whiskey from him, and so we think the objection to the indictment for the reason indicated is not well taken.

The other objection is that the indictment should have set forth the specific subject matter being investigated by the grand jury at the time Blakey was inquired of. The charge is that Blakey "in an investigation judicially pending and before said grand jury which it had legal jurisdiction to try did falsely give evidence" in the manner and form pointed out in the indictment, and in our opinion this was a sufficient averment.

Section 1174 of the Kentucky Statutes, under which the indictment was found, reads in part as follows:

"If any person, in any matter . . . which is being investigated by a grand jury . . . shall willfully

and knowingly swear, depose or give in evidence that which is false, . . ."

And under this section we do not think it essential that the indictment should set out the specific matter being investigated by the grand jury at the time the alleged false testimony is given. It is only necessary that it should state facts showing that the matter being investigated by the grand jury related to a subject that the grand jury had jurisdiction to investigate, and this the indictment does.

The grand jury has jurisdiction to inquire into all violations of the liquor laws of the state, and the indictment shows that when Blakey made the false statement the grand jury was inquiring into violations of the liquor laws.

But aside from all this it cannot be doubted that this indictment gave Blakey full and accurate information of the charge against him in language so simple that a person of ordinary intelligence could not fail to understand the nature of the accusation he was called on to meet, and except in cases where some special technical averment is required by statute this is all that is needed to make an indictment good. Upon this point what was said in Overstreet v. Commonwealth, 147 Ky. 471, may be repeated here: "The strict and technical rules of criminal pleading that prevailed at common law and for many years in this state have been superseded by the more just and sensible practice that declines to be controlled by unimportant and unsubstantial forms that serve to delay and obstruct the administration of the criminal law without protectin the accused in any right guaranteed to him by either the common law, or the Constitution or statutes of the state.

". . . the essential things are that the indictment shall contain (a) the name of the party charged, (b) the offense charged, (c) the county in which it was committed, (d) and a statement of the acts constituting the offense, in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended, and such degree of certainty as to enable the court to pronounce judgment on conviction according to the rights of the case. It is apparent that when an indictment furnishes this information, the accused cannot be misled or deceived by it or fail to know what offense he is charged with, nor will

the court be in doubt when it comes to pronounce judgment. An indictment may contain more than is necessary, or it may be phrased in inapt words, or the sentences may be ungrammatically or awkwardly expressed, or the spelling not conform to approved standards, but if, when considered as a whole, the charge is stated with sufficient clearness and certainty to enable a person of common understanding to know what he is charged with, and to enable the court to pronounce judgment, no error in form of expression will make the indictment bad. Nor will any difference between the accusative part of the indictment and the body or descriptive part of it, that is not so substantial as to be misleading, be fatal to the sufficiency of the pleading. In other words, in considering the sufficiency of an indictment, it will be read and considered as a whole, and if when so read and considered it substantially conforms to the requirements of the Code in respect to the matters therein pointed out as material and necessary, it will be a good indictment. We do not mean to say that an indictment that departs from the substantial rules of Code pleading or that fails in some material respect to conform to common law or statutory requirements should be treated as a good pleading. What we do mean to say is that it is only the substantial material things that are necessary, and that the failure to observe formal or immaterial things will not be regarded as fatal to the indictment."

We are therefore of the opinion that the court did not err in overruling the demurrer to the indictment.

It is further complained that the evidence, to which we may here observe there was no objection or exception, was not sufficient to sustain the finding of the jury, but we are unable to agree with counsel in this contention. It appears from the record that J. R. Rose, who was foreman of the grand jury, after first administering the usual oath to Blakey, asked him if he had bought any whiskey from any person within the past twelve months, and Blakey replied that he had purchased a pint of whiskey from a negro by the name of Marvin Patey, in Russellville, Logan county, Kentucky, about March, 1918. Two other members of the grand jury gave in substance and effect the same evidence. It is further shown by other undisputed evidence that Patey, in 1916, was convicted of the crime of car breaking and sentenced to the penitentiary at Eddyville, in Lyon county, for a term of from

two to five years, and that pursuant to the judgment then entered was taken to the penitentiary at Eddyville, where he remained in confinement until April, 1918, when he died on his way home from the penitentiary.

Blakey, in his own behalf, testified that about March, 1918, he purchased a pint of whiskey from a negro by the name of Marvin Patey, He also testified that after giving this evidence before the grand jury he told George Davis that he had been before the grand jury and had indicted a dead negro.

It appears from this brief summary of the evidence that there is no direct testimony by living witnesses that Blakey did not buy whiskey from Patey, as he testified he did before the grand jury, and if it were necessary that the falsity of the evidence given by a person indicted for false swearing should be made to appear by direct evidence from the mouth of living witnesses the argument of counsel would be sound. But the falsity of the testimony of a witness may be shown by circumstantial as well as by direct evidence, and when it is made clear as it is in this case by undisputed facts that the evidence was false the case against the accused will be as successfully made out as if it had been shown by word of mouth that the evidence was not true.

It was a physical impossibility for Blakey to have bought whiskey in Russellville in March, 1918, from Marvin Patey when at that time, and for some months before, Patey was and had been confined in the penitentiary at Eddyville, in Lyon county, and this fact conclusively established that Blakey's statement was false. Indeed the establishment of the whereabouts of Patey furnished more convincing evidence that Blakey did not buy any whiskey from him than could have been furnished by witnesses who might have said from their personal knowledge that Blakey did not at the time mentioned buy any whiskey from Patey.

The falsity of the evidence of a person charged with false swearing may be shown by the evidence of living witnesses or it may be shown by documentary or written evidence or it may be shown by facts that clearly and convincingly establish the falsity of the statements made by the accused. Commonwealth v. Davis, 92 Ky. 460.

The remaining ground for reversal relates to the instructions. The court in the instructions told the jury that if they believed to the exclusion of a reasonable

doubt that Blakey willfully, feloniously and knowingly, while a witness before the grand jury and after he had been duly sworn, made the false statement that he had bought whiskey from Marvin Patey in Logan county within twelve months before that day, and if they should further believe that at the time said statement was made it was false and untrue and was known to be false and untrue by Blakey and was made for the corrupt purpose of deceiving the grand jury they should find him guilty. In another instruction they were told they could not find him guilty unless it had been proven to the exclusion of a reasonable doubt by the testimony of two witnesses, or one witness and strong corroborating circumstances, that he had given false testimony. In another they were instructed that if they had a reasonable doubt of his guilt they should find him not guilty. It seems to us that these instructions aptly presented to the jury the whole law of the case.

Finding no error in the record prejudicial to the substantial rights of the accused, the judgment is affirmed.