## Taylor v. Commonwealth.

(Decided Dec. 7, 1934.)

668

J. B. JOHNSON for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the regular January term, 1933, of the Whitley circuit court its grand jury indicted appellant and defendant therein, John Taylor, for false swearing, committed when he theretofore testified as a witness for defendant at the trial of a murder prosecution pending in that court of Commonwealth of Kentucky v. William Shelton. In that prosecution the homicide, with which Shelton was accused, occurred at a bridge across Jellico creek, known as "Walker Mill bridge," and appellant herein testified at that trial that he and his brother, Dewey Taylor, were near that bridge and saw Shelton stab his victim under circumstances justifying him in doing so under his right of self-defense. The indictment herein avers that such testimony by appellant was corruptly, fraudulently, knowingly, intentionally, and feloniously given, and all of which was false "and the said Taylor at the time he so swore knew the truth to be that he was not at or near the end of the said bridge at the said time and he knew the truth to be that he did not see the said killing." At the trial thereunder ap-

pellant (to whom we shall hereafter refer as defendant) was convicted and punished by confinement in the penitentiary for two years, and from that verdict and the judgment pronounced thereon, after his motion for a new trial was overruled, he prosecutes this appeal urging a number of grounds as alleged errors claimed to be sufficient to authorize a reversal of the judgment; but our careful consideration of the record convinces us that counsel is in error as to each of them. Such as we conclude deserve consideration will receive it as the opinion proceeds, but some of the argued grounds are so clearly immaterial as to not justify mention or consideration.

It is first insisted that defendant's motion to quash the indictment should have been sustained because it was found at a reconvened session of the grand jury in the latter part of the regular term of the court at which it was selected contrary (as contended) to the order of court recalling it and not in accordance with the present section 2251 of the 1933 Supplement to Kentucky Statutes, which is a part of chapter 64 of the Session Acts of 1932, amending and re-enacting former sections 2248 et seq. of Carroll's Kentucky Statutes. The applicable sections as so amended (sections 2249 and 2251) prescribe that "a grand jury shall be summoned at three regular terms of circuit court, unless otherwise ordered by the judge," and that it "shall not remain in session longer than six days at any regular term of court, but the court in its discretion may if the business before the grand jury requires it extend the time of the grand jury not more than three days longer. * * * The court may in its discretion in case of an emergency call not more than three special sessions of the grand jury for not more than three days at a time. The court in calling a special grand jury shall set forth in an order entered on the order book of the court the reason for calling a special session of the grand jury."

The order reconvening the grand jury in this case, and at which reconvened meeting defendant was indicted, recites that the six days allotted for its regular term did not afford sufficient time to investigate a certain murder that had been committed in the county and then "recalls the grand jury for the further investigation of that case and such other cases as it sees fit to investigate to convene on Monday the 4th week of this term and to remain in session not exceeding two days." In support of this ground counsel cites a number of

cases from this court relating to the *trial* of cases at *special* terms of the court when the particular case (to the trial of which objections were made) had not been included in the call of such *special* term, which order purported to designate each case to be tried thereat. It will at once be seen that those cases have no bearing whatever on the question here involved. The reassembling of the grand jury in this case occurred at the same term at which it was selected and impaneled, and in effect was nothing but an extension of its regular limited term of six days. It did not purport to confine the investigations of that body when reconvened to any particular matter, but, on the contrary, authorized it to investigate "such other cases as it sees fit," as well as the homicide case thereinbefore referred to. It will, therefore, be seen that this objection is wholly unfounded.

It is next insisted that the court erred in the admission of incompetent testimony offered by the commonwealth wherein (a) Dewey Taylor was asked and affirmatively answered that defendant, John Taylor, told him (Dewey) that Dick Shelton, a relative of the defendant in the indictment of Wm. Shelton, during the trial of which the alleged false testimony is charged to have been given, had promised to credit him (defendant) with $30 on an indebtedness for purchase money of land if he (defendant) would give the alleged false testimony. As argued in brief, the objection to that testimony is that it did not fix the time and place when defendant told the witness the fact testified to by him, and counsel asked in his brief this question: "We wonder if the attorney knew that section 598 of the Civil Code of Practice had ever been written"? etc., which section requires that before a witness may be contradicted by showing that he made different statements on other occasions he should be asked concerning them and the time and place and persons present should be incorporated in the question. In reply thereto we might wonder if it occurred to counsel that any statement in the form of a confession or admission made by the defendant on trial is provable as substantive testimony, without the laying of a foundation by first asking defendant concerning it. We have so held continuously without any opinion to the contrary, and from which it results that the argument against the criticized testimony is likewise unfounded.

In support of this ground counsel further argues (b) that the court erred in admitting testimony the purpose of which was to contradict a witness for defendant, Nell Ball, who had testified that just after William Shelton committed the homicide for which he was on trial she saw, about 500 yards away from her, two men going away from the bridge, but did not know who they were. The purpose of that was to create the surmise that possibly those persons were defendant and his brother, Dewey Taylor. She had stated on the trial of Shelton that she had not seen the two Taylors going away from that bridge or anywhere about it upon the occasion of the homicide committed by Shelton, and, when asked if she had so testified, she practically admitted it. But, notwithstanding such admission, the stenographer who transcribed her testimony on the Shelton trial was introduced and proved it substantially as she had admitted it. It is difficult for us to see wherein that testimony introduced by the stenographer was prejudicial. It, in substance, was but a repetition of what the witness, Nell Ball, had already stated. However, if it had been otherwise, she stated on both trials and was not contradicted on this one, that she did see two male persons going away from the bridge on the occasion of the homicide by Shelton, but that because of the distance she could not recognize them. We, therefore, conclude that this objection scarcely amounts to a quibble; and for which reason also another objection urged in brief, to the effect that the court erred in not admonishing the jury as to the effect of the stenographer's testimony, is equally immaterial, since there was practically no contradiction requiring such admonition even if it had been prejudicial error not to have done so if the alleged contradicting testimony had been different.

It is next argued that the court erred in giving instruction No. 1 to the jury, which is in these words: "The court instructs the jury that if you believe from the evidence beyond a reasonable doubt that in Whitley County, Kentucky, before the finding of the indictment herein, the defendant, John Taylor, was sworn as a witness by R. S. Rose, Judge of the Whitley Circuit Court, in the prosecution of the Commonwealth of Kentucky against Wm. Shelton, charged with the offense of murder, and that said John Taylor did knowingly, falsely, corruptly, willfully, feloniously and wickedly depose and

give in evidence that he, the said John Taylor, was at or near the end of the Walker Mill Bridge at the time Shelton killed Harold Bird, and that he, the said John Taylor, saw the killing; and shall further believe from the evidence beyond a reasonable doubt that the said John Taylor was not at or near the end of the Walker Mill Bridge at the time Wm. Shelton killed Harold Bird, or that he did not see the said killing then you will find the defendant guilty as charged in the indictment and fix his punishment at confinement in the State Penitentiary for a period of not less than 1 nor more than five years, in your discretion.''

The criticisms thereof are (c) that the instruction does not follow the language of the indictment; (d) that it fails to negative the alleged false testimony, and (e) that it does not require the jury to find that the testimony was false or known to be false by defendant when he gave it, or that he willfully and knowingly did so. The cases cited in support of such criticisms are, Neal v. Commonwealth, 246 Ky. 59, 54 S. W. (2d) 599; Blakey v. Commonwealth, 183 Ky. 493, 209 S. W. 516; Goslin v. Commonwealth, 121 Ky. 698, 90 S. W. 223, 28 Ky. Law Rep. 683. We have examined and carefully read the opinions in each of them, as well as those in other domestic cases referred to therein, and we acknowledge our complete inability to detect wherein the complained of instruction in this case fails to measure up to what we said in any of those opinions. They all deal with and set forth the elements of perjury and false swearing, and which should be averred in indictments therefor, among which are, that (after reciting that the defendant on trial was duly sworn in a matter about which he could be required to testify and setting forth his testimony) what he stated under oath was false and known to be false by him when he gave it, and he willfully, feloniously, corruptly, etc., so testified under oath. The criticized instruction in this case submits every such element. It requires the jury to believe beyond a reasonable doubt that the defendant was sworn by the presiding judge as a witness in the Shelton case and that thereafter he "knowingly, feloniously, corruptly, willfully, falsely and wickedly" testified that he "was at or near the end of Walker Mill Bridge at the time Shelton killed Harold Bird, and that he * * * saw the killing"; also that if the jury further believed the evidence beyond a reasonable doubt that defendant was not at or

near the end of Walker Mill bridge upon the occasion referred to, or that he did not see the killing of Bird by Shelton, then the jury was authorized to convict him.

The only possible and pretended defect in the instruction appears to be that the court should have submitted to the jury the last proposition contained in the instruction, concerning the falsity of the testimony, in language something like this: "And shall further believe from the evidence beyond a reasonable doubt that the said John Taylor was not at or near the end of the Walker Mill Bridge at the time William Shelton killed Harold Bird, or that he did not see the said killing, *and that such statements made by him, if the jury believed beyond a reasonable doubt that he did so, were false and known by him to be false at the time,*" etc. The criticism seems to be directed at the fact that the court did not incorporate the italicized or added language that we have inserted. It is true that upon the trial of many such cases the falsity of the testimony is sometimes repeated in the instruction in the manner contended for by counsel, and which he insists should have been done in this case.

Instructions in criminal cases should follow the language of the indictment and submit to the jury the elements of the offense charged, as contained in the indictment, which (as is required of it by subsection 2 of section 122 of the Criminal Code of Practice) should contain "a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case." The instruction in this case, as did also the indictment, required the jury to believe beyond a reasonable doubt, not only that defendant with the necessary corrupt motive (describing it) knowingly gave the testimony alleged to be false, and that the jury should so find it to be false, but it furthermore required the jury to believe beyond a reasonable doubt that he was not at the place where he swore that he was, and that he did not see the killing of Bird by Shelton, before he could be convicted of false swearing, and which clearly stated to the jury in language not to be misunderstood by a person of "common understanding" as to what was intended, or to require a repeating of it in different phraseology in order to

make it so understandable, and which is the express holding of the cases relied on by counsel to sustain this ground, and it is particularly true of the Blakey Case. We, therefore, conclude that this ground is likewise without merit.

The next argument for reversal is that the jury that tried defendant was not selected in the manner required by law and in support of this ground (raised for the first time on the motion for a new trial) the affidavit of the clerk of the Whitley circuit court was filed, in which he stated: "That there is no order, entered in any order book, appointing the jury commissioners who filled the wheel for the September Term of this court." Whether or not that (September) term of the court was or not the one when the jury wheel should be filled for the succeeding year was not made to appear in any manner, nor did the affidavit of the clerk state that the jury commissioners who did put the names of the jury that tried defendant in the wheel, were not appointed and duly qualified as required by law; but only that there was *no order* of record in the proceedings of the preceding September term of the court to that effect. But without going into a discussion of such matters, and conceding for the purposes of this case that no such commissioners were appointed by the court at the time indicated in the clerk's affidavit, then the objection now urged by counsel would not be available to his client, since it was waived by not being made before the jury was selected. It is not claimed that any of the jury were not eligible for jury service and whose names could have lawfully been put into the jury wheel, but only that the record showed no order appointing commissioners at the particular term indicated.

Construing the involved statute with reference to the selection of petit jurors, and determining the exact question now under consideration adversely to the appellant, we held in the cases of Continental Coal Corporation v. Cole's Adm'r, 155 Ky. 139, 159 S. W. 668, Galliaer v. Southern Harlan Coal Co., 247 Ky. 752, 57 S. W. (2d) 645, and others referred to therein, that if the complaining litigant accepted the jury so irregularly called, without entering his objections beforehand, he thereby waived such defective selection and could not later rely on it after the return of an adverse verdict at the termination of the trial. In other words, we therein announced the rule that a defeated litigant would

not be permitted to take the chances of a favorable verdict at the hands of a jury improperly selected and then repudiate his action in submitting thereto when the verdict was unfavorable to him. It is insisted, however, that counsel was not apprised of the situation at the time he accepted the jury in this case; but whether or not jury commissioners had been properly appointed and had properly acted were matters of public record, and in the cited opinions we said that a litigant is charged with knowledge that could be obtained by ordinary diligence and especially by consulting a public record; and, a fortiori, should that be true when the public record is that of the court itself in which the trial is being conducted. It is, therefore, apparent that this objection also is unavailable.

Lastly it is insisted that prosecuting counsel made improper remarks during his argument to the jury; but without lengthening the opinion, we deem it sufficient to say that we have examined them and conclude that in some instances they may not have been altogether proper, but we find none of them as transcending our declared limitations applicable thereto, or sufficiently so as to be reversibly material, and for which reason this ground also must be denied.

Finding no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.