**Edward Leon BAKER, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY, Appellee.**

No. 2001–SC–0504–TG.

Supreme Court of Kentucky.

April 24, 2003.

Karen Maurer, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler III, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Office of Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

Appellant, Edward Leon Baker, was convicted in the Madison Circuit Court of two counts of using a minor in a sexual performance. He was sentenced to a total of thirty years imprisonment and appeals to this Court as a matter of right. Finding no error, we affirm.

On January 6, 2000, Appellant went to the photo counter at a local Kroger store and requested that a photograph be printed from a negative he gave the clerk, John Avera. Upon printing the photograph, Avera discovered that it was a picture of a young girl with her breasts exposed and her face covered by an "Elmo doll." [1] The girl was later identified as Appellant's twelve-year-old step-granddaughter, J.R. When Appellant returned to the counter to pick-up the photograph, Avera told him that it did not turn out. Avera thereafter contacted store security who then turned the photos over to the Richmond Police Department.

After identifying Appellant through the store's surveillance tapes, Detective Ellen Alexander obtained a search warrant for Appellant's home. Appellant was arrested at that time on two charges of Use of a Minor in a Sexual Performance, relating to the two pictures printed at the Kroger store. During the search, Detective Alex-

---

**1.** Avera also printed another photograph from the negative which contained similarly ob- scene material.

ander seized a camera found in J.R.'s bedroom that contained a roll of undeveloped film. Police thereafter developed the film, finding nine other pictures of J.R. As a result, Appellant was charged with nine additional counts of Use of a Minor in a Sexual Performance.

Prior to trial, defense counsel moved to suppress the nine photographs upon which counts 3–11 were premised since the search warrant did not specifically authorize the seizure of the camera or undeveloped film. At the suppression hearing, Detective Alexander testified that the camera and film were taken after J.R., who lived with Appellant and was apparently present during the search, informed the Detective that there were some more nude pictures of her on the film. The trial court ruled that the seizure of the camera and film was proper, and denied the motion to suppress.

At the close of all evidence, and before the case was submitted to the jury, the trial court reduced the charges to two counts, merging counts 1 and 2, which were based upon the two pictures developed at the Kroger store, and counts 3–11, which were based upon the nine pictures developed from the roll of film seized during the search of Appellant's residence.

The jury found him guilty of both counts and he was sentenced to fifteen years on each, to run consecutively for a total of thirty years imprisonment.

## I.

■ Appellant argues that the trial court erred in denying his motion to suppress the nine pictures developed from the roll of film since seizure of the camera and film was outside the scope of the warrant. Specifically, the warrant authorized the seizure of any:

Pornographic or obscene pictures of a child under the age of 16;

Pictures of a child without clothing in violation of the Kentucky Revised Statutes;

Pictures depicting a minor in sexual performance;

Any computers or computer generated materials which could contain child pornography; and

Video tapes containing child pornography.

Appellant is correct that the warrant did not designate the camera or film. However, Detective Alexander, the only witness who testified at the suppression hearing, explained that the camera was seized only after J.R. stated that the film contained more nude photographs of her taken by Appellant. Thus, the trial court concluded that since the warrant authorized the seizure of pornographic or obscene pictures, once J.R. informed Detective Alexander about the contents of the film, seizure of the camera was justified.

Appellant points out that J.R. subsequently testified at trial that the camera was, in fact, found in a kitchen drawer and that when she gave it to police, she did not know if it contained film. As such, Appellant believes that the trial court should have thereafter *sua sponte* reversed its suppression ruling since J.R.'s testimony differed from that of Detective Alexander. We disagree.

First, J.R. did not testify at the suppression hearing. The trial court's denial of Appellant's suppression motion was based upon the testimony presented during the hearing and will not be set aside if supported by substantial evidence. RCr 9.78. We conclude that it was. Furthermore, Appellant fails to note that J.R. also testified at trial that Appellant had threatened to kill her if he went to jail. We conclude that the trial court properly denied the motion to suppress based upon the evi-

dence that was presented during the suppression hearing. The mere fact that J.R.'s testimony contradicted Detective Alexander's testimony did not warrant suppression of the photographs.

Although not presented to the trial court, Appellant also offers the novel theory that suppression was warranted because undeveloped film does not constitute a "photograph" within the context of KRS 531.300(5) [2], and thus was not evidence of the crime for which he was charged. Relying on chemistry principles, Appellant asserts that undeveloped film has no visual image until it undergoes a chemical reaction during the developing process. Albeit interesting, we find no merit in Appellant's proposition, and agree with the reasoning of the Florida District Court of Appeals in *Schneider v. Florida*, 700 So.2d 1239, 1240 (Fla.Dist.Ct.App.1997):

> Webster's defines the term photograph as "a picture or likeness obtained by photography" with the root word photography defined as "the art or process of producing *images* on a sensitized surface (as a film) by the action of radiant energy and esp. light." Merriam Webster's Collegiate Dictionary 857 (10th ed.1993) (emphasis added). Hence, by definition, a photograph is the exposure of the film at the time the picture is snapped. A hard copy of the photograph is a print and the developed film would be a negative.

*See also United States v. Smith*, 795 F.2d 841 (9th Cir.1986), *cert.denied*, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987) (undeveloped film constitutes a "visual depiction" within the meaning of 18 U.S.C. § 2252(a), the Federal Sexual Exploitation Statute). Furthermore, the trial court found that seizure of the camera and film

was proper and, once processed, the pictures developed from the film were certainly evidence of Appellant's use of a minor in a sexual performance.

## II.

Next, Appellant argues that he was entitled to an instruction on the misdemeanor offense of possession of matter portraying a sexual performance by a minor, KRS 531.335(1), which reads as follows:

> A person is guilty of possession of matter portraying a sexual performance by a minor when, having knowledge of its content, character, and that the sexual performance is by a minor, he knowingly has in his possession or control any matter which visually depicts an actual sexual performance by a minor person.

While maintaining that he was only in possession of "an undeveloped roll of nonimages that he *might* have later developed," Appellant argues that the jury could have found him guilty of possessing potentially obscene pictures and convicted him under KRS 521.335(1). We disagree.

Appellant admitted to staging the photographs of J.R., and thus ignores the plain language of KRS 531.310 which simply does not require a "finished product" to be guilty of using a minor in a sexual performance. As the Commonwealth points out, while a photograph may be considered a performance, any other visual representation before an audience involving sexual conduct by a minor is also a performance. KRS 531.310(5). Appellant's act of taking the pictures of J.R.'s exposed breasts and genitalia was sufficient to satisfy the statute. *See also Alcorn v. Commonwealth*, Ky.App., 910 S.W.2d 716 (1995).

---

**2.** "'Performance' means any play, motion picture, photograph or dance. Performance also means any other visual representation exhibited before an audience[.]" KRS 531.300(5).

An instruction on a lesser-included offense is required only if, considering the totality of the evidence, the jury could have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense. *Clifford v. Commonwealth*, Ky., 7 S.W.3d 371, 377–78 (1999); *Bills v. Commonwealth*, Ky., 851 S.W.2d 466 (1993). We do not believe the jury could have reasonably doubted Appellant's guilt on the greater offense and merely found him guilty of the misdemeanor offense.

### III.

The eleven-count indictment charged Appellant with having committed the offense of Use of a Minor in a Sexual Performance, KRS 531.310, "by *inducing* [J.R.] . . . to expose, in an obscene manner, [various female anatomy]." However, over defense objection, the trial court instructed the jury that it could find Appellant guilty if it believed "he knowingly employed, authorized, or induced [J.R.] to engage in a sexual performance or consented to [J.R.'s] engagement in a sexual performance[.]" Appellant argues that he was prejudiced by the additional language in the instruction because his sole defense was that he did not *induce* J.R., rather she "had shown an interest in modeling, acting, and singing" and that "she thought the picture taking was fun."

As the trial court noted during an extensive on-the-record conference regarding instructions, Appellant completely ignores the fact that consent of the minor is clearly not a defense. The statute is intended to protect minors from exploitation regardless of whether their participation is voluntary. *Holbrook v. Commonwealth*, Ky.App., 662 S.W.2d 484 (1984). "Indeed, 'employs, consents to, authorizes or induces' all imply the possibility of voluntary participation by a minor, as the idea or force or coercion is not ordinarily conveyed by those words." *Id.* at 488. It is wholly irrelevant that the twelve-year-old victim in this case did or did not consent to the photographic sessions.

Furthermore, we fail to perceive any prejudice to Appellant. Defense counsel conceded during the conference that the indictment sufficiently charged Appellant with violating KRS 531.310, and readily admitted that he was familiar with all of the language contained therein. And while Appellant claims prejudice because he had already questioned witnesses about whether there was inducement, defense counsel neither requested additional time nor recalled any witnesses following the trial court's ruling on instructions despite being told he could do so.

Contrary to Appellant's assertion, the indictment was not amended to include the additional language of KRS 531.310. However, the trial court had the discretion to amend the indictment in this case pursuant to RCr 6.16. Appellant was aware of the language contained in KRS 531.310, and the evidence was certainly sufficient to warrant an instruction including that additional language. We find no error in the instructions.

For the reasons stated herein, the judgment and sentence of the Madison Circuit Court are affirmed.

LAMBERT, C. J., COOPER, GRAVES, JOHNSTONE, STUMBO, and WINTERSHEIMER, J.J. concur.

KELLER, J., concurs by separate opinion in which COOPER, J. joins.

KELLER, Justice, concurring.

I also vote to affirm the judgment of the Madison Circuit Court, but I write separately because I disagree with Part

III, in which the majority addresses Appellant's argument that the trial court's jury instructions erroneously broadened the allegations in the indictment. Although, the majority "find[s] no error in the instructions,"[1] I would hold that the discrepancies between the indictment and instructions constituted an error, but one that was harmless in this case. In my view, Appellant has not demonstrated that the indictment, which charged him with "inducing [J.R.] ... to expose, in an obscene manner, her breasts which he photographed," misled him as to the nature of the Commonwealth's allegation and thereby prejudiced his ability to mount a defense to the charges. In fact, I believe the record refutes Appellant's assertion that, because of the language in the indictment, he failed to anticipate that the Commonwealth would seek, and the trial court would ultimately give, jury instructions permitting a guilty verdict if the jury believed beyond a reasonable doubt that Appellant knowingly "employed, authorized, or induced [J.R.] to engage in a sexual performance or consented to [J.R.'s] engagement in a sexual performance." Because our rules permit amendments to indictments "any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced,"[2] and neither limitation is implicated in the variance between indictment and instruction

here, the discrepancy between the indictment and the instructions easily could have been avoided if the Commonwealth had moved the trial court to permit an amendment of the indictment to include all theories of liability under KRS 531.310 that were supported by the evidence. Thus, although a "step was skipped" in this case when the trial court instructed the jury as it did without first permitting the Commonwealth to amend the indictment, that error does not justify reversal of Appellant's convictions.

In discharging its duty "to instruct the jury in writing on the law of the case,"[3] a trial court should draft instructions that not only track the evidence at trial, but also "substantially follow the language of the indictment and submit the elements of the offense contained in the indictment."[4] As early as the late 19th Century, our predecessor characterized an instruction that strayed from the indictment as "erroneous."[5] And, under the former Criminal Code of Practice ("Criminal Code"), the Court treated any variance between the indictment and the evidence presented (or instructions given) as error, but assessed the prejudice associated with the error in a manner similar to today's harmless error review.[6] Reversal was appropriate only when a variance was "fatal" or "material"—i.e., when the variance "misleads the accused in making his defense or exposes

---

1. Majority Opinion, 103 S.W.3d 90, 94 (2003).

2. RCr 6.16.

3. RCr 9.54.

4. 1 Cooper, Kentucky Instructions to Juries (Criminal) § 1.13 at 29 (Anderson Publishing Co.1999) (hereinafter "Cooper"). *See also Taylor v. Commonwealth*, 256 Ky. 667, 76 S.W.2d 923, 926 (1934) ("Instructions in criminal cases should follow the language of the indictment and submit to the jury the

elements of the offense charged, as contained in the indictment ....").

5. *See McBride v. Commonwealth*, 76 Ky. 337, 13 Bush 337, 338 (1877).

6. Code of Practice in Criminal Cases (1877) (repealed 1963) § 353 ("The judgment shall be reversed for any errors of law appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby.").

him to danger of a second conviction of the same offense."[7] Since we adopted the Rules of Criminal Procedure, which "place more emphasis on fair notice and fair trial than upon rigid technicality"[8] and provide for more liberal amending of indictments,[9] the issue of whether the indictment could have been amended to eliminate the variance has become central to an analysis of the prejudice associated with a variance between an indictment and an instruction.[10] Admittedly, in cases such as the one at bar—where RCr 6.16's first limitation is not implicated because the variance between the instructions and the indictment does not charge a separate or additional offense—this determination is a close parallel to harmless error review under RCr 9.24, which directs courts to "disregard any error or defect in the proceeding that does not affect the substantial rights of the parties."[11] By framing the inquiry in terms of the possibility of an amendment of the indictment under RCr 6.16, however, we access a body of precedent in which "it is well-settled that any variance which misleads the accused in making or preparing his defense is fatal."[12] And, we thus evaluate prejudice to the defendant's substantial rights by examining the de facto amendment's effect upon defense strategy.

Here, the jury instructions unquestionably broadened the indictment's specific allegation and permitted the jury to find Appellant guilty without finding that Appellant undertook some affirmative act to cause J.R. to participate in a sexual performance.[13] I conclude, however, that the in-

7.   *Braswell v. Commonwealth*, Ky., 339 S.W.2d 637, 638 (1960).

8.   *Robards v. Commonwealth*, Ky., 419 S.W.2d 570, 573 (1967). *See also Finch v. Commonwealth*, Ky., 419 S.W.2d 146, 147 (1967) (explaining that the new Rules of Criminal Procedure "have adopted the principle of notice pleading" and that, although "all details of the charge" need not be set forth in the indictment, "if the defendant needs information concerning the details of the charge against him to enable him to prepare his defense, he should be supplied them through a requested bill of particulars.").

9.   *Compare* Code of Practice in Criminal Cases, *supra* note 6 at § 126(5) ("The court may at any time cause the indictment to be amended in respect of any defect, imperfection, or omission *in the matter of form only.*" (emphasis added)) *with* RCr 6.16, *supra. See also International Shoe Co. v. Commonwealth*, 300 Ky. 806, 190 S.W.2d 553, 554 (1945) (holding that § 126(5), which was adopted in 1942, will not "permit the Commonwealth's Attorney to amend an indictment by supplying substantial averments omitted by the Grand Jury.").

10.   *Johnson v. Commonwealth*, Ky., 864 S.W.2d 266, 273 (1993) ("[T]he indictment here ought to have been amended (to be more accurate, it ought to have been more carefully drafted), but the failure to amend was unquestionably harmless."); *Commonwealth v. Day*, Ky., 599 S.W.2d 166, 169 (1980) ("[U]nder RCr 6.16 the indictment could and should have been amended to include the period through July 3, 1977, the date shown by the proof and used in the instructions. However, the failure to do so did not affect Day's substantial rights."); *Robards v. Commonwealth, supra* note 8 at 573 ("The indictment could and should have been amended at the conclusion of the testimony, but it cannot reasonably be held that a failure in that respect affected the defendant's substantial rights."); *Berry v. Commonwealth*, Ky.App., 84 S.W.3d 82, 92 (2002).

11.   RCr 9.24.

12.   *Davis v. Commonwealth*, Ky., 399 S.W.2d 711, 713 (1966).

13.   *See Holbrook v. Commonwealth*, Ky.App., 662 S.W.2d 484, 488 (1984) ("'[C]onsent to' or 'authorize' as used in [KRS 531.310] does not require an affirmative act to cause Diaz to participate in the movie. To employ or induce a minor to engage in the performance of sexual acts would necessitate such an affirmative act; however, the definition of the offense is not limited to such affirmative acts.").

dictment did not mislead Appellant or cause him to believe that the Commonwealth was alleging liability only under KRS 531.310 "induces" language. Four (4) months before trial, Appellant filed a Motion to Consolidate Counts in which he stated both that he was "charged with eleven counts of 'employ[ing], consent[ing] to, authoriz[ing], or induc[ing] a minor to engage in a sexual performance'" and that "[t]he key element as pertaining to the defendant's guilt is whether he employed, consented to, authorized, or induced a minor to engage in a sexual performance." In my view, this motion evidences Appellant's understanding that the Commonwealth would seek to impose liability for each of the bases outlined in KRS 531.310, and, as such, it reflects knowledge that refutes Appellant's assertion that he was misled. Further, the actions taken (and not taken) by Appellant after the trial court overruled his motion for a directed verdict (and informed counsel that it intended to instruct the jury on not only the "induces" basis, but also the "employs" and "authorizes" bases of KRS 531.310 liability [14]) are not what one would expect from someone who had just been "sucker-punched" by an unexpected, mid-trial change of theory on the part of the Commonwealth. Specifically, Appellant, through his trial counsel: (1) made little effort to minimize his exposure to allegedly unexpected bases of liability and, in fact, argued that, if the court had decided not to limit liability to "induces," it should instruct on all of the KRS 531.310 bases of liability, including "consents to," which the trial court had indicated its intention *not* to include in the instructions; (2) did not ask for a continuance to retool the defense; (3) presented no evidence in his own defense, and did not recall any of the Commonwealth's witnesses in order to mount a factual defense to the alternative bases for KRS 531.310 liability; and (4) focused his closing argument upon a technical, legal argument, which was wholly unrelated to the difference between "induces" and the other KRS 531.310 bases of liability and which Appellant had raised previously in a pre-trial motion four (4) months prior to trial. I also observe that, in support of this argument, counsel referenced the previous day's cross-examination testimony

---

**14.** Although not raised as an allegation of error in either the trial court or on appeal to this Court, the manner in which the trial court dealt with Appellant's Motion for Directed Verdict may have allowed the jury to return a non-unanimous verdict. The basis for Appellant's Motion for Directed Verdict was that the Commonwealth had failed to prove that Appellant had "induced" J.R. to participate in a sexual performance as alleged in the indictment. Although the trial court denied Appellant's motion, it did so because it found that the evidence would support a guilty verdict for one of the alternative bases of KRS 531.310 liability ("authorizes" and "employs"), but the trial court never addressed (on the record, anyway) whether the evidence would support the "induces" theory it submitted to the jury. If the evidence would not have permitted a jury reasonably to conclude that Appellant had "induced" J.R. into a sexual performance, even if it would have supported a guilty verdict under the other KRS 531.310 bases, the trial court risked reversible error by including the "induced" basis in the jury instructions. *See Neal v. Commonwealth*, Ky., 95 S.W.3d 843 (2003). As Appellant does not question the sufficiency of the evidence on appeal, did not object to including "induces" in the instructions, and actually requested that the trial court include "consents to" after the trial court expressed its preliminary belief that the evidence did not support a conviction on that basis, I mention the possibility of error only to caution the bench and bar of the need to tailor jury instructions to the evidence presented. *See* Cooper, *supra* note 4 at § 1.06 at 18–19 ("[T]he instructions must have a source within the framework of the evidence actually introduced at trial.... The jury should not be instructed on a theory of the case not sustained by the evidence, or on a theory opposed to the evidence." (footnotes omitted)).

and utilized poster-sized exhibits reproducing statutory language during his closing—suggesting that this defense was not cobbled together overnight after a surprise ruling by the trial court. In short, Appellant's trial counsel, no doubt recognizing that he had little ability to muster a factual defense to this offense given his client's admission that he took nude photographs of his pre-teen step-granddaughter, made a clever attempt—albeit a bit of a "Hail Mary"—to win a directed verdict on a technicality. Appellant, however, "was not misled, surprised or thrown off guard except insofar as he chose to shoot the gap in reliance upon a mere technical defect of which he was fully aware." [15] And, here, even "reliance" was absent because, when the trial court denied Appellant's motion for a directed verdict of acquittal—and thereby prevented Appellant from exploiting this technicality—Appellant was equipped to mount a defense against the indictment on legal rather than factual grounds. As such, Appellant's defense preparations would not have been prejudiced by an amendment of the indictment, and the variance between the indictment and the instruction was thus a harmless error.

Although I believe that the de facto amendment of this indictment did not, in fact, mislead Appellant as to the nature of the Commonwealth's allegations, I should emphasize that I can envision how, in other cases, a defendant may be misled by an indictment that identifies one or more bases or theories of liability and excludes others. After all, under the theory of

notice pleading incorporated within our criminal rules, indictments are supposed to "fairly inform[ ] the defendant of the nature of the crime with which he is charged," [16] and RCr 6.10 accordingly provides that "[t]he indictment . . . shall contain . . . a plain, concise *and definite* statement of the essential facts constituting the specific offense with which the defendant is charged." [17] Because our rules allow—but *do not require*—an indictment to specify the means by which a defendant committed an offense,[18] I find it reasonable for a defendant to conclude that the Commonwealth intends to hold him or her liable for an offense only under the bases identified if bases are specified in the indictment. Accordingly, I simply do not agree with the notion that, as long as the indictment complies with RCr 6.10(3) and "state[s] . . . the official or customary citation of any applicable statute, rule, regulation, or other provision of law which the defendant is alleged therein to have violated," [19] a defendant has notice that the Commonwealth may seek instructions as to any and all statutory means of committing the offense named. After all, if the mere citation of an applicable statute is sufficient notice, then the other provisions of RCr 6.10 are superfluous because the indictment need only state that the defendant violated the statute. I am confident from my review of the record that the Commonwealth's eleventh-hour request for instructions permitting the jury to find Appellant guilty if it found that Appellant "authorized," "employed," or "consented to" J.R.'s participation in a sexual performance was not delayed deliberately for

---

15. *Robards v. Commonwealth, supra* note 8 at 573.

16. *Finch v. Commonwealth, supra* note 8 at 147.

17. RCr 6.10(2) (emphasis added).

18. RCr 6.10(3) ("It may be alleged in any count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.").

19. *Id.*

tactical gain. This case, however, illustrates the need for diligence on the part of both prosecutors—in reviewing evidence prior to presenting cases to the grand jury, in drafting proposed indictments, in reviewing indictments during subsequent preparations for trial, and in seeking amendments as soon as trial preparations reveal that the evidence will support additional bases of liability—and defense attorneys—in reviewing indictments returned by the grand jury in light of discovery and independent investigations and, if necessary, seeking a bill of particulars under RCr 6.22 when additional details regarding an accusation are needed in order to prepare a defense. In future cases, adequate preparation should help to eliminate any risk of confusion.

COOPER, J., joins this concurring opinion.