## State of Maine

*vs.*

## John Schumacher

Lincoln.    Opinion, November 5. 1953.

*James Blenn Perkins, Jr.,* for State.

*Christopher S. Roberts,* for Defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, WEBBER, JJ.

TIRRELL, J. This case is here on exceptions to the overruling of a demurrer filed in the Superior Court for the County of Lincoln.

The case originated by complaint to the Lincoln Municipal Court. The complaint on its face tends to show a violation of the State Liquor Law so-called. Upon the complaint a warrant was issued by the Judge of the Lincoln Municipal Court.

The charging part of the complaint is as follows:

"that John Schumacher, of Damariscotta in the County of Lincoln, on the sixth day of February A. D. 1953 at Damariscotta in the County of Lincoln aforesaid, did sell a certain quantity of intoxicating liquors, to wit; one pint of intoxicating liquor labelled Sevilla Rum, to one Charles Thayer of North Whitefield for the amount of three (3) Dollars, the said John Schumacher not having then and there a license therefor issued by the State Liquor Commission as provided by the laws of State of Maine; said offense being the second, the said John Schumacher being found guilty of a single sale in the Lincoln Municipal Court of Lincoln County on the first day of October 1951, and sentenced to pay a fine of $300.00 and costs of $17.86. Against the peace of the State, and contrary to the form of the Statute in such case made and provided."

The so-called record as sent forward from the Lincoln Municipal Court to the Superior Court is not an independent record as is proper (see *State* v. *Houlehan*, 109 Me. 281, at page 283), but the printed record of the case as it is now before us shows that the record forwarded to the Superior Court was made on the back of the complaint and warrant. This record shows that the respondent, having been brought

before the Lincoln Municipal Court upon this complaint and warrant, was arraigned and pleaded *not guilty*. Hearing was waived by the respondent, whereupon he was adjudged guilty and sentenced. An appeal to the Superior Court from this finding was filed and completed.

At the May 1953 Term of the Superior Court for the County of Lincoln the County Attorney for the County of Lincoln nolle prossed that part of the above complaint as refers to a prior conviction. Thereafter respondent filed a demurrer which was joined by the county attorney. This demurrer was acted upon by the presiding justice who overruled the demurrer and gave judgment for the State. To this ruling the respondent excepted and the exceptions were allowed by the presiding justice. The presiding justice then sentenced the respondent, and the clerk was authorized to accept bail, the case being then marked "LAW" on the docket.

The general rule in criminal cases is that upon an appeal from a magistrate or lower court to the Superior Court the matter comes before the Superior Court for trial *de novo*. This means that the matter comes forward on the complaint and further upon the plea of the respondent, the words *"de novo"* applying to the actual trial of the case. The withdrawal of the plea made in the lower court must be by and with the consent of the presiding justice. In the instant case the presiding justice did not directly give to the respondent leave to withdraw his former plea, the county attorney stood by, made no objections to the filing of the demurrer, and as a matter of fact joined it and made that the issue. The presiding justice took before him the merits of the demurrer and ruled thereon. In doing this this court holds that he, the justice presiding, impliedly gave his consent to the respondent to withdraw the former plea of not guilty.

In *State* v. *Whitten*, 90 Me. 53 the court heard a demurrer

which was filed in the court above without withdrawal of the plea in the court below and overruled the same, stating, however, that it was an irregular proceeding "but possibly permissible inasmuch as the demurrer was duly joined by the prosecuting officer."

In *State* v. *Thomas,* 90 Me. 223, the demurrer was filed by consent of the parties and consent was granted to plead over, it not appearing whether that consent was granted by the court or was agreed to by the county attorney.

In *State* v. *Haapanen,* 129 Me. 28, Judge Dunn, later Chief Justice Dunn, held that a motion to quash came too late after plea in the municipal court unless leave was granted prior to the filing of the motion without withdrawal of the plea or the withdrawal of the plea by consent of the court.

Having the above citations in mind and holding that the respondent impliedly was given the right to plead anew, we now turn to the merits of the demurrer.

The complaint was intended to be drafted under the provisions of R. S. (1944), Chap. 57, Sec. 66, the pertinent parts of which read as follows:

"Whoever, by himself, his clerk, servant or agent, sells any liquor in this state, in violation of law, shall be punished . . . . . . Any clerk, servant, agent or other person in the employment or on the premises of another, who violates or in any manner aids or assists in violating any provision of law relating to intoxicating liquors, is equally guilty with the principal and shall suffer like penalties."

The above quoted section was amended, Public Laws of Maine 1951, Chap. 137, the pertinent provisions of which read as follows:

"Whoever, being licensed to sell liquor, by himself, his clerk, servant or agent sells any liquor in this state, in violation of law, shall be punished. . . . . ."

> Any person or his clerk, agent or servant who sells liquor within the state without a license shall be punished. . . . . Any clerk, servant, agent or person in the employment or on the premises of another, who violates or in any manner aids or assists in violating any provisions of law relating to intoxicating liquors is equally guilty with the principal and shall suffer like penalties."

This above quoted amendment is divided into two parts and controls the sale of intoxicating liquor. The first part prohibits the sale by a person *licensed to sell liquor* by himself, his clerk, servant or agent in this state, *in violation of law*. This part of the statute is to prohibit a sale of intoxicating liquor by those licensed to sell liquor in this state *in violation of law*. It may be readily seen that although one has a license to sell intoxicating liquor in this state, one may do so in violation of law. For instance, a person might be licensed to sell intoxicating liquor at a certain defined place in one city in the state, and should he sell it from another location in the same city or some other city in this state, it would be in violation of law. This second provision of this amendment applies to a person, his clerk, agent or servant who sells intoxicating liquor within the state *without a license.*

The first cause set out by the respondent in support of his demurrer is that the complaint does not allege, as he says in the words of the statute, that "the sale was made in violation of law" or words equivalent thereto, as "without lawful authority." And he argues that this must be alleged where the complaint is drafted to define a crime under the first as well as the last clause therein. And in his brief he states:

> "The questions for decision would be these:

> Are the words in the complaint 'not having then and there a license therefor issued by the State Liquor Commission' the same meaning as 'without a license'?

...... are the words 'without a license' equivalent to the words 'in violation of law?' "

The complaint alleges in part: "the said John Schumacher not having then and there a license therefor issued by the State Liquor Commission as provided by the laws of State of Maine." It may be readily seen that the alleged violation was of that part of the statute which prohibits the sale of intoxicating liquor at all times or under any circumstances by persons not licensed. It is true that this complaint sets forth that the respondent "not having then and there a license therefor" issued by the State Liquor Commission as provided by the laws of the state. A search of the Statutes of Maine reveals that the only person or agency authorized to issue licenses is the State Liquor Commission (see R. S. (1944), Chap. 57, Sec. 6, Subsec. VI).

It may be noted that Subsection VI, above referred to, gives the State Liquor Commission the right to *issue all licenses*. The respondent gains nothing by this first cause of demurrer as argued by him.

The second and other ground set forth by the respondent as a reason why his demurrer should be sustained is that the complaint is insufficient in law because it contains the following words, to wit: "one pint of intoxicating liquor labelled Sevilla rum." The demurrant, in his brief and by oral argument, concedes that the words "labelled Sevilla rum" are surplusage. This court thoroughly agrees with the contention of the respondent concerning the use of the words "labelled Sevilla rum" and it, too, without hesitation says that the use of the words "labelled Sevilla rum" can be and is no other than surplusage. The respondent, however, contends that in some instances a person could sell alcohol in the State of Maine without being duly licensed therefor. The respondent in this contention and assertion makes reference to R. S. (1944), Chap. 57, Sec. 6, Subsec. II. The caption appearing at the beginning of said Section 6 is as

follows: "POWERS AND DUTIES OF COMMISSION."
Subsection II, referred to above, reads as follows:

"II. (1937, c. 232, Sec. 2; c. 250) To have
control and supervision of the purchase, importa-
tion, transportation, and sale of alcohol; and to
make rules and regulations for such purchase, im-
portation, transportation, and sale of same to any
industrial establishment in this state for industrial
uses, or schools, colleges, and state institutions for
laboratory use only, or to hospitals for medicinal
use therein only, or to any licensed pharmacist in
this state for use in the compounding of prescrip-
tions and other medicinal use but not for sale by
such pharmacists unless compounded with or
mixed with other substances, or to any physician,
surgeon, osteopath, chiropractor, optometrist, den-
tist, or veterinarian for medicinal use only."

It is apparently by virtue of this portion of the Revised
Statutes that the respondent claims that one might sell alco-
hol without being duly licensed therefor. However, this Sub-
section II refers to industrial establishments, schools, col-
leges, state institutions for laboratory work, hospitals for
medicinal use only or to licensed pharmacists in this state
for use in the compounding of prescriptions and other
medicinal use to any physician, surgeon, osteopath, chiro-
practor, optometrist, dentist or veterinarian for medicinal
use only.

It is true that this complaint does not negative the fact
directly that this respondent was in one of the classes re-
ferred to in the statute. We note, however, that the com-
plaint in question contains the customary and usual phrase
"against the peace of the State, and contrary to the form
of the Statute in such case made and provided." It is ap-
parent, therefore, on inspection of the complaint that the
respondent did sell intoxicating liquor "against the peace of
the State, and *contrary to the form of the Statute in such
case made and provided*" (see opinion of this court in *State*

v. *Chase*, 99 A (2) 71, at page 76), wherein Mr. Chief Justice Merrill, in speaking for this court, said:

> "The allegations in this indictment that the respondent killed and murdered Yoksus 'against the peace of said State, and contrary to the form of the statute in such case made and provided' are equivalent to an allegation that the killing was unlawfully done."

It has so long and universally been held that all that is necessary in a complaint or indictment is to substantially charge the respondent with the criminal offense that no citations appear necessary. Had this respondent desired or wished to know the kind of intoxicating liquor that he was alleged to have sold to the certain specified person he could readily have petitioned the court to order the state to file a Bill of Particulars concerning that particular point. This he failed to do.

The Presiding Justice of the Superior Court was correct when he overruled the respondent's demurrer.

The docket entry and mandate to the Superior Court must be

*Exceptions overruled.*

*Judgment for the State.*