Hon. LUKE P. POLAND,  
Hon. JOHN PIERPOINT,  } ASSISTANT JUDGES.  
Hon. LOYAL C. KELLOGG,

---

### THE STATE OF VERMONT *v.* JOHN HUMPHREY.

#### *Criminal law. Larceny.*

If one hire a horse of another, under the pretence that he wishes him only for a temporary purpose, when in fact he designs wholly to deprive the owner of him, and he actually does put the horse to a different use from that for which he hired him, it is larceny, even though he do not sell or dispose of the horse.

*It seems* that the obtaining of the horse under such false pretences, with the design of stealing him, is in itself larceny.

INFORMATION for stealing a horse. Plea not guilty, and trial by jury at the April Term, 1859, ALDIS, J., presiding.

The prosecution introduced testimony tending to show that the respondent, at about half past nine o'clock in the forenoon, went to a livery stable in Swanton, and hired the horse in question, to go, as he said, to St. Albans with, promising to return by noon; that at this time the respondent intended to steal the horse; that he drove the horse to St. Albans and thence immediately to Shelburn, where he stayed over night, at one Isham's hotel; that the next morning, having no money to pay his hotel bill, and Isham refusing to let him take away the horse without paying it, he went on foot to Vergennes and Middlebury, leaving the horse at Isham's ; that on the following day the respondent was arrested, and that he then voluntarily stated that he intended to take the horse to a back town near Whitehall, N. Y., and there sell or exchange him ; and that '' ʼ horse was on the same day retaken by the owner at Isham's hotel in Shelburn.

The counsel for the respondent requested the court to charge the jury that if the respondent hired the horse, and did not *in point of fact* dispose of him, it was not larceny. The court declined so to charge, but told the jury that the respondent at the very time he hired the horse, must have intended to steal him, and that if he did not have such intent at that time, but *after* having hired him, *then* for the first time entertained and formed the idea and intent of stealing him, that would not be larceny ; that to constitute larceny the jury must find that *at the time he hired him* he intended to convert the horse permanently to his own use, to keep, or to sell, or exchange him ; that if he merely intended to take him for a ride, and then leave him for the owner to get again, that would not be larceny; but that if the respondent, at the time he hired the horse, intended to convert the horse permanently to his own use, and deprive the owner of him entirely, (the other facts in the case being made out,) it would be larceny, although he did not in point of fact dispose of the horse. To this part of the charge, and to the refusal of the court to charge as requested, the respondent excepted.

The jury returned a verdict of guilty.

State *v.* Humphrey.

*James S. Burt* and *George F. Houghton*, for the respondent.

1. To constitute the crime of larceny the taking of the property must be forcible and against the will of the owner. If the owner voluntarily part with the possession of the property, although he may have been induced to do so by the false representation of the one hiring the property, the taking is not forcible nor against the will of the owner; Wharton's Am Cr. Law, sec. 1750; *Felter* v. *State*, 9 Yerger 397.

2. There must be not only an intention to steal at the time of the hiring, but also an actual conversion of the property afterwards; 2 Russell on Crimes, 54–56; *Regina* v. *Brooks*, 34 Eng. Com. Law, 396.

*Wm. W. White*, for the prosecution, cited 2 Arch. Crim. Pracs 361 *et seq.*; 3 Greenl., sec. 162; 2 Starkie's Ev. 824 *et seq.*; *Commonwealth* v. *Jones*, 1 Pick. 375; 2 Russell on Crimes, 20, 46, 50, 52, 53; *Cary* v. *Hotailing*, 1 Hill 311.

POLAND, J. The respondent's counsel claim that, as the horse and wagon came into his possession by the consent of Jennison, the owner, he was not guilty of the crime of larceny, although such consent was obtained by his own false and fraudulent pretence that he wished to hire the same to go to St. Albans merely, when in fact he intended thus to get possession of the property, and then to convert the same to his own use, and wholly deprive the owner of his property. The argument upon this point it founded upon the common definition of larceny, as given in the elementary books, that it is the felonious taking the property of another, *without his consent and against his will*, with intent to convert the same to the use of the taker.

It is said that in this case the taking was not *without the consent and against the will of the owner*, and therefore not a felonious taking.

But as is said by Mr. ARCHBOLD, "this must be understood as meaning merely the absence of all *free* and *voluntary* consent upon the part of the owner to the party taking his goods and appropriating them to his own use." Where the consent of the owner to the taking has been obtained by fraud and deception by

inducing him to believe that the taker wishes to obtain the property for an honest and temporary purpose, when in fact the design is to wholly deprive him of it, and where no consent would have been given if the real purpose had been disclosed, this is not regarded as any assent by the owner, and the taking for the purpose and design of the taker is against the will of the owner. A consent thus obtained is wholly nugatory, and the taking may be regarded as tortious, and the taker as a trespasser, both civilly and criminally.

The only authorities cited in support of this view, are *Felter* v. *State*, 9 Yerger 398, and some cases preceding that in the State of Tennessee. Those cases adopt the reasoning of the respondent's counsel to the fullest extent. But the law is fully established otherwise in England, and so far as we are able to learn, in every State in the Union except Tennessee. It is so laid down by every elementary book on criminal law. It has been repeatedly so held in this State on trials in the county court, and has been regarded as so well settled as to have never before, to our knowledge, been brought before the supreme court. Indeed, in the Tennessee case it is declared to be a doctrine peculiar to that State, and admitted to be against the doctrine of the English courts and the other States. The general current of decision on this subject seems to us also to be founded upon the plainest principles of natural justice and good sense, and we do not think there is any occasion to abandon what has been so long regarded as a fixed rule of law in this State.

2. It is claimed that when the felonious taking is under a pretence of hiring or borrowing the property, the offence is not complete until the taker has converted the property by selling or disposing of it.

This certainly is not necessary in ordinary cases of larceny where possession of the property is obtained without the knowledge or consent of the owner. It is sufficient in such cases to show that the taker has obtained possession of the property and that the property is severed from the possession of the owner. Even when the thief is arrested upon the premises of the owner of the stolen goods, it is held that the offence is complete. This ingredient of the offence certainly is not included within the ordi-

nary definition of larceny, that only requires a taking, etc.,'' "with intent to convert the same to the use of the taker," not that an actual conversion should be proved. It does not become necessary to decide in the present case whether the offence is complete before the property has been carried beyond, or put to any other use than that contemplated by the pretended and ficti-tious bailment. We do not see upon principle why it is not, as soon as the possession is obtained from the owner, provided the fraudulent and felonious intent be proved, for that very taking is of itself a conversion.

Practically, however, this becomes unimportant because in all this class of cases the evidence of the subsequent conduct and acts of the party, in making a different use of the property from that contemplated by the pretended hiring, and appropriating the property to his own use, furnishes the evidence that the original intent was felonious, and that the hiring or borrowing was a mere device to obtain the possession from the owner, and an opportunity to steal the property.

We have been referred to notes of decisions in the United States Criminal Digest of *Lewer* v. *Corwin*, 15 Serg. & Rawle, 93, and *State* v. *Lindenthall*, 5 Rich. (S. C.) 237, in which it is stated to have been held that when one obtains possession of another's goods by false representations, with the fraudulent intent to convert them to his own use, and *does convert them to his own use*, it is larceny. We have not seen the cases, and do not know how far they warrant the doctrine of the note, that there must be an actual conversion by the fraudulent bailee to consti-tute the crime of larceny. The notes of these decisions do not seem to support the idea that the conversion must be by a sale of the property.

The facts proved in this case show an actual conversion by the respondent. Even if the hiring had been *bona fide*, and without any fraudulent design, the subsequent driving the horse and wagon from St. Albans to Shelburn, was an actual conversion of the property by the respondent, and trover could have been maintained without any demand and refusal. Those cases there-fore do not seem at all to conflict with the ruling of the court below in this case.

The only case cited which seems to support the view, that there must be an actual disposal of the property in order to constitute the offence, is *Regina* v. *Brooks*, 8 C. & P. 295, 34 E. C. L., .396. That case is merely a *nisi prius* ruling of the late Ch. J. TINDAL, whose *nisi prius* opinion we concede to be entitled to as much weight as that of any single judge.

In that case the defendant hired a horse and gig in London, to go to Windsor to be gone two days. Instead of going to Windsor he went in the opposite direction to Rumford, where he offered the horse and gig for sale, but was unable to effect a sale because his appearance and manner excited so much suspicion, and upon such suspicion he was there taken into custody ; Ch. J. TINDAL directed an acquittal. The only reason stated by the reporter is as follows : " Here has been no actual conversion of the property, only an offer to sell."

The case seems to be identical almost in its facts with Spencer's case, 1 Lew. 197, before BAYLEY, J. and Armstrong's case, 1 Lew. 195, before HOLROYD. J., in each of which it was submitted to the jury to say if the original design in obtaining the property was to steal it, and if so, it was held that it was larceny.

Mr. GREAVES, the English editor of the recent edition of Russell on Crimes, one of the most eminent of modern crown lawyers, treats the case of *Regina* v. *Brooks* as erroneous, and as conflicting with the other decisions in the English courts. We are unable to find that that case has been followed either in England or in this country. The reason given that there was no conversion of the property is unfounded, for the driving the horse and gig to another place was clearly a conversion. We feel justified in wholly disregarding the authority of that case, as opposed to both authority and reason.

The result of such a doctrine would be, that when property is thus obtained by a fraudulent device, the taker could never be convicted of larceny so long as he only kept the property for his own use, however effectually he might have deprived the owner of his property. The absurdity of the result is a sufficient answer to the proposition itself.

The exceptions are, therefore, overruled.