103 A.2d 511 (1954)
STATE
v.
POPOLOS.
Supreme Judicial Court of Maine.
March 10, 1954.
Alexander LaFleur, Atty. Gen., William H. Niehoff, Sp. Asst. Atty. Gen., for plaintiff.
Berman, Berman & Wernick, Portland, Benjamin L. Berman, Lewiston, for defendant.
Before MERRILL, C. J., and THAXTER, FELLOWS, WILLIAMSON, TIRRELL, and WEBBER, JJ.
*512 TIRRELL, Justice.
This case comes before this Court on respondent's exception to decision of the Presiding Justice below which overruled respondent's demurrer to the indictment.
Respondent was indicted at the October 1952 term by the Grand Jury of the County of Kennebec. The indictment purports to charge perjury by the respondent allegedly committed before the Grand Jury itself. The indictment is as follows:

"State of Maine
"Kennebec, ss.
"At the Superior Court, begun and holden at Augusta within and for the County of Kennebec, on the first Tuesday of October in the year of our Lord one thousand nine hundred and fifty-two.
"The Jurors for Said State upon their oath present that Nicholas Popolos, also known as Nick Popolos, of Portland in the County of Cumberland and State of Maine, on the 15th day of October, in the year of our Lord one thousand nine hundred and fifty-two, at Augusta in said County of Kennebec, appeared as a witness before the Grand Jury of said County of Kennebec, the said Grand Jury being then and there a competent court and tribunal of competent jurisdiction, and being then and there engaged in hearing testimony relative to the commission of crime in said County of Kennebec and the said Nick Popolos having been then and there sworn according to law, and being required to tell the truth on oath lawfully administered did then and there commit the crime of perjury by testifying as follows; to wit: That at the time he, the said Nick Popolos, was away from the state the Supreme Wine Company would include in their check to his brother, Fred, the amount due him, the said Nick Popolos, and pay it to his brother Fred, who would give to said Nick Popolos his check for the amount due Nick Popolos from Supreme Wine Company. That a check of $133.33 given by Fred Popolos to said Nick Popolos was for commission due Nick Popolos from Supreme Wine Company, that a check of $282.47 given by Fred Popolos to said Nick Popolos was for commissions due said Nick Popolos from Supreme Wine Company, when in truth and in fact said testimony was false and untrue, all of which the said Nick Popolos then and there well knew to be false and untrue, which said testimony was material to the issue and inquiry then and there pending before said Grand Jury, against the peace of said State, and contrary to the form of the statute in such case made and provided.
 "A true Bill.
 "William Niehoff
 "Special Assistant Attorney General
"Donald F. Reeck
 "Foreman"
The language of the indictment which is brought into question in the present case reads as follows:
"That Nicholas Popolos * * * appeared as a witness before the Grand Jury of said County of Kennebec, the said Grand Jury being then and there a competent court and tribunal of competent jurisdiction, and being then and there engaged in hearing testimony relative to the commission of crime in said County of Kennebec * * *."
This is the only language in the indictment which purports to indicate to the respondent, in any manner, the issue, inquiry or subject pending before the Grand Jury to which his allegedly false testimony is claimed to be material.
For this reason, on the 17th day of October 1952 term the respondent filed a demurrer to the indictment. At the time the written demurrer was filed, and on the same page thereof, the respondent expressly reserved the right to plead over in the event the demurrer should be overruled. The Presiding Justice overruled the demurrer and explicitly granted the respondent leave to plead over. As to demurrers in criminal cases see State v. Rogers, 149 Me. 32, 98 A.2d 655; State v. Schumacher, 149 Me. 298, 101 A.2d 196.
*513 The respondent excepted to the decision of the Presiding Justice overruling his demurrer and now prosecutes his exception before this Court. The respondent's contention is that an indictment for perjury is defective when it does no more, to designate the proceeding in which allegedly false testimony has been presented, than to state that the testimony was given
"before the Grand Jury of said County of Kennebec * * * then and there engaged in hearing testimony relative to the commission of crime in said County of Kennebec."
This indictment is defective at common law as an indictment for perjury. In State v. Corson, 1871, 59 Me. 137, this Court said:
"The respondent demurs to the indictment against him for perjury. It is very clear that the indictment is bad in many particulars, if considered under the old rules of the common law, or of our former practice and decisions. Indeed, the criminal pleader found great difficulty in so framing an indictment for perjury, that it could stand the searching examination and technical objections thereupon raised by astute counsel. And the records in all the States show that it had become extremely difficult to pursue a perjurer to final judgment and sentence, however clear his guilt, or however atrocious his crime."
The present indictment must rely, for its salvation, on the provisions of R.S.1944, Chap. 122, Sec. 4, which sanctions the streamlining of perjury indictments provided that certain fundamentals are substantially observed.
The essentials of an indictment for perjury in this State are set forth in a prescribed form by the legislature. But such a form is subject to constitutional restrictions and must be in compliance therewith. The statutes prescribing forms of indictment have removed many of the niceties of technical pleading and the indictment is made little more than a simple statement of the offense couched in ordinary language and with due regard for the rights of the accused. But they cannot change the requirements that the indictment must, as at common law, contain every averment that is necessary to inform the defendant of the particular circumstances of the charge against him.
However, the statute, as specifically worded, is not applicable to a grand jury proceeding because of the secrecy of such proceeding. In its literal form the statute contemplates a proceeding which is adversary in naturein which party is arrayed against party. The statute says:
"appeared as a witness in a proceeding in which C. D. and E. F. were parties, then and there being heard before a tribunal of competent jurisdiction * * *." (Italics ours.)
The real issue of the present case thus emerges as follows. Where an indictment purporting to allege perjury, committed before a grand jury, undertakes to substitute the language,
"before the grand jury of said County of Kennebec * * * then and there engaged in hearing testimony relative to the commission of crime in said County of Kennebec."
for the literal statutory language, "in a proceeding in which C. D. and E. F. were parties," is such adaptation sufficient to accomplish "substantially" the same kind of specification intended by the naming of parties which is required in situations involving adversary proceedings?
We turn, therefore, to discern the purpose of the language of the statute "in a proceeding in which C. D. and E. F. were parties," since this will furnish the key clue to the present problem. Clearly, by the language "in which C. D. and E. F. were parties," the statute is demanding that the indictment shall set forth a specific, particular proceeding. The statute is requiring that this particular proceeding shall be identified, in its individuality, from among the multitude of proceedings heard *514 or adjudicated by the competent tribunal involved. It is for this reason that the statute requires that the names of the parties be set forth, since, in an adversary proceeding, such is the generally accepted and prevailing method by which an individual and particular case is identified.
Indeed, the fact that the statute thus requires the designation and identification of the specific particular proceeding, or case, to which the perjury allegedly relates, was an important factor in the sustaining of the constitutionality of the streamlined statutory form. In State v. Corson, 1871, 59 Me. 137, which upheld the constitutionality of the statutory form, this Court emphasized at least twice during the course of the opinion the fact that the indictment is required by the statute to refer "to a matter between two parties named."
It seems manifest, therefore, that an indictment for perjury relating to a proceeding adversary in character, which fails to designate and identify a specific, particular proceeding by naming the parties thereto would be fatally defective, not only at common law, but even under the statute.
The attempted adaptation in the present indictment is defective for the reason that it fails entirely to particularize and identify a specific matter or subject of criminal investigation by the Grand Jury of Kennebec County to which the alleged perjury relates. The "investigation of crime" is the most generic possible description of the function of a grand jury. It has no tendency to identify or particularize. Just as a court hears cases or proceedings, so a grand jury investigates or inquires into a crime or crimes. When an indictment speaks of a witness who appeared before a grand jury, and says no more about the proceeding than that the grand jury was "then and there engaged in hearing testimony relative to the commission of crime in Kennebec County," it accomplishes no more than that the respondent appeared as a witness before the Kennebec County Grand Jury "then and there engaged in hearing testimony relative to the commission of crime in the County of Kennebec." Such allegation does not identify the particular proceeding, or inquiry, by which the materiality of the testimony may be adjudged; it does little more than to indicate the jurisdiction of the tribunal. There is thus a complete failure of such indictment to identify the particular subject matter from amongst the mass of material, within the jurisdiction of the tribunal, which was under study or in process of administration.
It is such individuality of subject which it is the clear purpose of the statute to require. That is why the statute insists that the parties to proceedings must be named. This purpose of identification must be fulfilled, and cannot be dispensed with when statutory form is adapted to cover a proceeding which is not adversary in nature and which lacks parties, such as a grand jury inquiry. In such case individualized identification of the particular subject matter included in the diversity of matters within the grand jury's jurisdiction to investigate, and in terms of which the materiality of the testimony may be assessed, must be accomplished by substituting other language which substantially fulfills the same purpose of identifying the subject matter. If not a particular crime, then at least some particular class of crimes, as distinguished from crime in general, embracing every possible crime that can be imagined must be specified. Otherwise it becomes impossible for the respondent to have any reasonable basis of information by which to assess whether the testimony set forth in the indictment, and alleged to be false, has any reasonable possibility of being material.
Thus, even in the cases which the state has previously cited, in which demurrers to indictments were overruled, the indictments were more specific than the present one. They attempted, at least, to specify a particular classification of crime rather *515 than crime in general,thereby to present some issue, on the face of the indictment, by which the question of materiality could be adjudged.
In Blakey v. Commonwealth, 1919, 183 Ky. 493, 209 S.W. 516, the indictment alleged inquiry into the violation of the liquor laws.
In Smith v. State, 1924, 163 Ark. 223, 259 S.W. 404, the allegation was
"in an inquiry or investigation * * as to the unlawful and felonious manufacture, sale, storing, having, and giving away of alcoholic and intoxicating liquors in said county and state * *."
In Thomas v. State, 1915, 13 Ala.App. 421, 69 So. 413, 414, the language was
"`under a charge of violating the prohibition law'".
In State v. Schill, 1869, 27 Iowa 263, the indictment said:
"in a criminal investigation then pending before the Grand Jury of said county, wherein one William Meyer, a Justice of the Peace of said county, was charged with oppression in office."
In contrast with the specificity of such indictments the indictment in the case at bar, mentioning only the commission of crime in general in Kennebec County, is as vague and uncertain an allegation as could be conceived. It identifies nothing of the subject matter of the inquiry to furnish a basis for the evaluation of materiality; it merely states the territorial jurisdiction of the Grand Jury and gives no clue to the identity of any particular proceeding embraced within that general jurisdiction.
The need for some particularized identification of subject matter, as a basis to assess possible materiality, is demonstrated by the case of State v. Ela, 91 Me. 309, 39 A. 1001. The decision in State v. Ela establishes that a respondent is entitled to have an adjudication by the court, from the face of the indictment alone, regarding whether the allegedly false testimony has any reasonable possibility of being material. If such possibility of materiality appears, the indictment need not specify the manner in which the testimony becomes actually material; it is sufficient, according to the statutory form, once the possibility of materiality is shown, to allege actual materiality in general terms. If, however, the face of the indictment shows that the testimony required by the statute to be recited has no reasonable possibility of materiality, then according to State v. Ela a demurrer should be sustained, regardless of the general allegation of actual materiality.
A respondent, or a court, cannot judge the reasonable possibility of the materiality of the testimony unless the indictment, on its face, identifies some specific issue, or subject matter, in relation to which the question of materiality is raised. Thus, the decision in State v. Ela reveals at least one reason for the requirement in the statutory form of identifying the proceeding by naming the parties thereto. The purpose is to allow for the formulation or identification of some issue, or inquiry, or subject matter in terms of which an initial judgment can be made regarding the possible materiality of the allegedly false testimony recited in the indictment. It is to enable the Court, by inspection of the indictment alone, to conclude whether the testimony set forth and claimed to be false can have any reasonable possibility of materiality. If the indictment on its face does not sufficiently identify the particular proceeding to which it is claimed the materiality of the alleged testimony relates, defendant is deprived of a most important right to which, under State v. Ela, he is entitled.
The general consensus of authority in the country sustains respondent's contentions and analysis as herein presented.
The leading case, and one squarely in point, is State v. Webber, 78 Vt. 463, 62 A. 1018, 1019. In Vermont there is, as in Maine, a streamlined statutory form of indictment in perjury cases. In support *516 of the demurrer to the indictment it was argued to the court
"that the indictment is fatally defective because neither count specified the subject matter of the investigation then being pursued by the Grand Jury."
The Vermont court upheld the demurrer and ruled that the indictment was fatally defective in spite of the statutory form. The court said:
"Is it necessary * * * to sufficiently inform this respondent of the cause and nature of the charge, to specify the matter then under consideration by the grand jury? We think it is. The highest degree of certainty is not required, but the charge must be set forth with such accuracy of circumstance as will apprise him with reasonable certainty of the nature of the same, that he may intelligently prepare to meet it, and, if convicted, successfully plead his conviction in a subsequent prosecution therefor."
Under the Constitution of the United States and by provision of the Constitution of Maine the accused is entitled to be informed of the nature and cause of the accusation against him. These provisions are based on the presumption of innocence and require such certainty in indictments as will enable an innocent man to prepare for trial. But no greater particularity of allegation that may be of service to the accused in understanding the charge and preparing his defense is necessary. However, all the elements or facts necessary to the crime charged must be set out fully and clearly. It is not, however, necessary to allege matters in the nature of evidence.
It is within the power of legislatures to prescribe the form of indictments and such forms may omit averments regarded as necessary at common law. But the legislature, while it may simplify the form of indictment, cannot dispense with the necessity of placing therein a distinct presentation of the offense containing allegations of all of its elements.
See Constitution of the United States, Article VI, Amendments; Constitution of Maine, Article I, Sec. 6.
See also U. S. v. Wilcox, 28 Fed.Cas. No. 16,692, p. 599; Commonwealth v. Pickering, 8 Grat., Va., 628, 56 Am.Dec. 158; Commonwealth v. Taylor, 96 Ky. 394, 29 S.W. 138; People v. Gillette, 126 App.Div. 665, 111 N.Y.S. 133; People v. Morrison, 98 Misc. 555, 164 N.Y.S. 712; State v. McCormick, 52 Ind. 169; Treece v. People, 96 Colo. 32, 40 P.2d 233; also, 41 Am.Jur. 25, Sec. 42; 70 C.J.S. Perjury, § 36, p. 502.
It is thus clear that an indictment for perjury, even under a streamlined statutory form, must contain some designation or identification of the particular matter being investigated, or heard, by the tribunal involved. Such identification is entirely lacking in the present indictment. The prosecutor has done no more than to show, in the most generic terms possible, that the Grand Jury was acting on a multitude of matters within its jurisdiction. In no manner has he undertaken to inform the respondent of any particularized or identifiable subject matter, within that general jurisdiction, by which the respondent or the Court can evaluate, initially, the possibility of the materiality of respondent's allegedly false testimony, or to give him information to prepare his defense. Neither can we comprehend how a respondent could plead former jeopardy under such a general allegation.
The Assistant Attorney General who argued the case for the State admitted in oral argument that during his search of cases of this nature he was unable to find any case analogous to this one which would support or favor this form of indictment.
Exceptions sustained.
Demurrer sustained.