**STATE of Maine**

v.

**Wilfred HEBERT, Jr.**

Supreme Judicial Court of Maine.

Argued May 13, 1982.

Decided July 28, 1982.

John D. McElwee, Dist. Atty. (orally), Houlton, Neale T. Adams, Deputy Dist. Atty., Caribou, for plaintiff.

William J. Smith (orally), Van Buren, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

CARTER, Justice.

At a jury trial in the Superior Court, Aroostook County, the defendant was convicted of gross sexual misconduct. *See* 17–A M.R.S.A. § 253 (1980).[1] He now appeals on the grounds that the indictment was fatally defective and that the evidence was insufficient to support the verdict. We affirm the judgment.

---

1. In pertinent part, § 253(1)(A)(1) (1980) reads: "A person is guilty of gross sexual misconduct ... [i]f he engages in a sexual act with another person, not his spouse, and ... [h]e compels such other person to submit ... by force and against the will of such other person...." Effective September 18, 1981, this portion of the statute was modified by P.L. 1981, ch. 252, § 3.

## I.

The jury would have been warranted in finding the following facts. During the afternoon of December 20, 1980, the defendant and his daughter, the complainant, ran several errands despite the complainant's reluctance to go with him. The defendant bought some beer; he drank some of it and told the complainant to do likewise. She complied.[2] Later during that trip, the defendant touched the victim's breasts. She told him to stop, and he eventually did.

They then returned to their home. The defendant and his wife became engaged in an argument over the fact that the complainant had been drinking. The defendant then forced the complainant into the car, and he drove with her to a bar where he ordered beers for both of them. She surreptitiously discarded hers on the floor. After she insisted that they leave, they entered the car. The defendant then lifted the complainant's shirt and kissed her breasts. The complainant resisted, and they drove away.

After they returned to their home, the complainant went upstairs to her bedroom where she went to bed nearly fully dressed. Approximately one hour later, the defendant woke the complainant, who was still in her bed, when he placed his hand under her shirt. She told him to stop; he said he only wanted to talk with her, but she testified that he "wasn't talking." After she then told him to leave her alone, he became angry, pulled her hair, covered her mouth, and punched her in the eye. Before he hit her, the defendant threatened to kill her if her mother heard her. The defendant then tore off the victim's pants and underwear.[3]

At this point, the defendant's wife, after realizing that her husband was no longer in their bedroom downstairs, ran up the stairs. The defendant left the complainant's bedroom and pushed his wife down the stairs. He then returned to the bedroom, jumped on top of the bed, and forced the complainant's legs apart. The complainant testified that the defendant then performed an act of oral-genital contact. The defendant's wife had once again ascended the staircase, and the defendant left the room and pushed her down the stairs once again. The defendant's wife testified that the defendant was zipping up his pants when he approached her the second time. He followed her down the stairs. The complainant shut her bedroom door, put on pajama pants and a robe, and ran out of the house. In the meantime, the defendant had pulled the telephone cord from its outlet, and he subsequently drove away. He returned twenty-five minutes later, evidently in a calmer state.

The complainant ran to a neighbor's house where she called the State Police. She returned to her home with a state police officer, and the defendant repeatedly apologized for his previous conduct.

## II.

In its entirety, the indictment charged: That on or about December 20, 1980, at Frenchville, County of Aroostook and State of Maine, WILFRED HEBERT, JR., did by force and against her will, compel [the victim] to engage in a sexual act, the said [victim] not being his spouse.

The defendant challenges this indictment on two grounds. First, he claims that the indictment does not identify the person with whom the complainant was compelled to engage in a sexual act. It may thus be construed, he asserts, to charge him as either a principal or an accomplice. Second, the indictment does not specify which of the forms of behavior statutorily characterized as a "sexual act"[4] is alleged here.

---

2. The effect of any intoxication played no role in the trial or disposition of this case.

3. The torn pants were introduced into evidence; the day after the incident, however, the victim burned the underwear.

4. "Sexual act" is defined in 17–A M.R.S.A. § 251(1)(C) (1980) as
 any act of sexual gratification between 2 persons involving direct physical contact between the sex organs of one and the mouth or anus of the other or direct physical contact between the sex organs of one and the

This lack of specificity, the defendant argues, renders the indictment fatally deficient.

■ The rules governing criminal pleadings, embodied in M.R.Crim.P. 7(c), both eliminate the technical and formal requirements that had been established by the common-law rules and thus effect simplicity of procedure.[5] *State v. Allison*, Me., 427 A.2d 471, 473–74 (1981); M.R.Crim.P. 2; *see United States v. Debrow*, 346 U.S. 374, 376, 74 S.Ct. 113, 114, 98 L.Ed. 92, 96 (1953). *See generally*, Glassman, *Rules of Criminal Procedure with Commentaries* §§ 7.3, 7.11 (1967 & Supp.1975). The essence of an indictment under Rule 7(c) is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." The need for such a statement, notwithstanding the general simplification of the rules of criminal pleading, becomes obvious in the light of the purpose of an indictment, which is to notify the accused of the exact charge which he or she is thereby called upon to meet so that a defense to that charge may be prepared properly and that the judgment resulting therefrom may constitute the basis for a plea of former jeopardy. *E.g., State v. Pierce*, Me., 438 A.2d 247, 250 (1981); *State v. Crocker*, Me., 435 A.2d 58, 68 (1981); *Allison*, 427 A.2d at 473. Despite the liberalization of the requirements of criminal pleadings effected by M.R.Crim.P. 7(c), these objectives constitute the measure against which the sufficiency of indictments is assessed, and they limn the boundaries of permissible pleading. The defendant's specific challenges to the instant indictment must be tested against those criteria.

## A.

■ The constitutional protection against double jeopardy rests on the notion

> that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continued state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957), quoted in *Bullington v. Missouri*, 451 U.S. 430, 445, 101 S.Ct. 1852, 1861, 68 L.Ed.2d 270, 283 (1981). This proscription against multiple prosecution for the same offense is secured by article I, § 8 of the Maine Constitution and by the fifth amendment of the United States Constitution, which is made applicable to state proceedings through the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969). In order that this guarantee against double jeopardy may be properly carried out in this context, the language of an indictment must be of sufficient precision to apprise both the defendant and the court of those subsequent prosecutions which are barred by the former judgment, upon an assertion of the defense of former jeopardy. *See Pierce*, 438 A.2d at 250; *Crocker*, 435 A.2d at 68.

Here, the defendant does not challenge the indictment as failing to state the crime

---

sex organs of the other, or direct physical contact between the sex organs of one and an instrument or device manipulated by the other. A sexual act may be proved without allegation or proof of penetration.

5. The pertinent terms of M.R.Crim.P. 7(c) demonstrate a goal of streamlined pleadings and a corresponding tolerance for the omission of specified technical and formal matter without jeopardy to the sufficiency of the indictment: The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . . It need not contain a formal commencement, a formal conclusion, or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. . . . Error in the citation of a statute or its omission shall not be grounds for the dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

of gross sexual misconduct. 17–A M.R.S.A. § 253.[6] Rather, he claims that the charge is couched in language so imprecise that the indictment is fatally insufficient. The *actus reus* of this crime is the commission of a "sexual act." This, in turn, is defined as any one of the several forms of behavior described in the statutory language set out in note 4 *supra*. The defendant thus asserts that the failure of the indictment to specify the exact criminal conduct of which he was charged here renders that indictment incapable of protecting him from subsequent prosecutions for other forms of conduct also falling fairly within the general descriptive terms of the instrument.

 We disagree. The allegation in the indictment that the defendant committed a "sexual act" constitutes pleading of a specific act by reference to a more general statutory term. Because that statutory language may mean, under 17–A M.R.S.A. § 251(1)(C) (1980), several different forms of behavior, that allegation in this indictment is ambiguous. It is clear, however, that when a defendant is placed in jeopardy under a valid indictment, he or she may not thereafter be placed in jeopardy for *any offense* of which he properly could have been convicted under that indictment. The scope of jeopardy created by an indictment is therefore as broad as that indictment may be fairly read. The ambit of the constitutional bar to subsequent prosecution is co-extensive with the scope of jeopardy created in the prior prosecution. Thus, if the allegations in one prosecution describe an offense which is shown to be within the scope of the charging allegations of a prior prosecution, then the defendant may successfully raise a defense of former jeopardy to the subsequent proceedings. *United States v. Tammaro*, 636 F.2d 100, 103 (5th Cir. 1981); *United States v. Castro*, 629 F.2d 456, 461, 462–63 (7th Cir. 1980); *Arnold v. United States*, 336 F.2d 347, 349 (9th Cir. 1964), *cert. denied*, 380 U.S. 982, 85 S.Ct. 1348, 14 L.Ed.2d 275 (1965); *State v. Katz*, 402 So.2d 1184, 1186 (Fla.1981); *State v. Wing*, Me., 426 A.2d 1375, 1378 (1981) (Roberts, J., concurring); *State v. Overman*, 269 N.C. 453, 463, 153 S.E.2d 44, 54 (1967); *State v. Haye*, 72 Wash.2d 461, 464, 433 P.2d 884, 887 (1968).[7]

In *State v. St. Clair*, Me., 418 A.2d 184, 189 (1980), for example, we upheld the sufficiency of an indictment that alleged the commission of embezzlement "during and between the months of November, 1973, and December, 1975." Although the evidence presented at trial was limited to a transaction that occurred on November 1, 1973, the jeopardy resulting from the jury verdict was held to "bar a prosecution covering the whole period" alleged by the terms of the indictment. *Id.* at 189, *quoting State v. Terroni*, Me., 270 A.2d 75, 76 (1970).

In the case at bar, the evidence presented at trial tended to demonstrate that the defendant engaged in oral-genital contact

---

6. *State v. James*, Me., 310 A.2d 267, 270 (1973) and *State v. Chick*, Me., 263 A.2d 71, 76 (1972), in which the respective indictments for criminal conspiracy failed to allege facts that would show the criminality of the conspiracy, are therefore distinguishable here. *See State v. Vane*, Me., 322 A.2d 58, 63 (1974) (a generally descriptive allegation of a specific subject matter involved in the alleged offense is sufficient if the illegality of that subject matter or the operative act is described). Nor is this case like *State v. Pierce*, Me., 438 A.2d 247, 254–56 (1981), where an indictment was held insufficient as failing to allege punishment-enhancement factors which the Court viewed as essential elements of the crime charged. Here, on the other hand, each of the elements necessary for a conviction and determination of punishment is alleged.

7. We also note that when the substance of the proof at trial is at *variance* with the allegations of the indictment, resort to that proof may be made under Maine law to demonstrate that, notwithstanding the indictment's apparent failure to charge the specific offense of which the defendant was in fact convicted, the defendant had been placed in jeopardy of that offense. *See State v. Wing*, Me., 426 A.2d 1375, 1377 (1981). On the other hand, where, as here, broadly framed allegations contained in an indictment may be read to state a variety of factual configurations, each supporting a criminal charge, resort to the indictment alone will be sufficient to preclude reprosecution of the same charge on the basis of any of those different, underlying factual claims.

with the complainant. The State offered no evidence at trial that the defendant committed other forms of sexual acts proscribed by section 253. However, the instant indictment, by pleading the commission of a "sexual act" and failing to identify *which* form of sexual act gave rise to *this* prosecution, must be seen by its own terms to charge the defendant with committing any sexual act, described by the statute, under the circumstances also alleged therein. When the jury was impaneled and sworn, see *State v. Linscott,* Me., 416 A.2d 255, 258 (1980), the defendant was placed in jeopardy of a conviction under this indictment of gross sexual misconduct, on the basis of any sexual act described by the statute that the State might seek to prove. If the State, already having tried the defendant for an oral-genital sexual act, later were to seek to prosecute this defendant for *another* form of sexual act constituting gross sexual misconduct committed against this complainant on December 20, 1980, in Frenchville, the defendant could successfully invoke the indictment at issue here as a bar to that subsequent proceeding; as that subsequent prosecution is one that could have been accomplished under the very terms of *this* indictment, it would be constitutionally prohibited, upon proper assertion of that defense by this defendant. This indictment is thus adequate to provide the defendant the basis for a plea of former jeopardy for any act fairly alleged in it.

█ Similarly, assuming, without deciding, that this indictment may fairly be read to charge the defendant as either a principal or an accomplice in the commission of the gross sexual misconduct, we conclude that the defendant will be protected from reprosecution under *either* theory by virtue of this exposure to a conviction in either capacity in the initial prosecution which is now before us.

█ In conclusion, the language in the indictment challenged by the defendant is sufficiently precise to afford a basis for a plea of former jeopardy. In so concluding, however, we cannot commend the drafters of such indictment for painting the instrument in strokes of the breadth exhibited here. Such an exercise can only push the sufficiency of the instrument to the brink of constitutional permissibility. The hazards of a failure to set forth the essential facts underlying the charge is clear. *See State v. Lunney,* Me., 400 A.2d 759, 762 (1979). Further, as the scope of defendant's former jeopardy protection is co-extensive with the scope of the allegations made in the initial indictment, the omission, as in the case at bar, of language specifying with relative particularity the conduct charged as criminal, operates to expand the scope of the accused's constitutional protection against subsequent jeopardy.

## B.

█ Focusing on the second objective of an indictment, the defendant asserts that its failure to inform him of either the nature of the "sexual act" alleged or the capacity in which he was charged impermissibly impeded the proper preparation of his defense.

In *State v. Crocker,* Me., 435 A.2d 58, 68 (1981), the defendant challenged the sufficiency of an indictment charging him with "depraved indifference" murder on the ground that the instrument did not particularize the facts underlying this statutory characterization. In rejecting the challenge, this Court reasoned that allegations of the victim's identity, the date of the alleged offense, and the recitation of the language of the statute that he was accused of violating, may combine to provide an adequate basis on which a defense could be prepared. *Id.*

The indictment challenged in this case apprised the defendant of the same type of information. Under *Crocker,* this is sufficient to defeat the defendant's claim. *See also State v. Vane,* Me., 322 A.2d 58, 63 (1974) (subject matter of indictment need not be described to the exclusion of all other possible subject matters, if that general description establishes the illegality of the act). Further, upon motion granted by the court below, this defendant was provided with discovery of statements made by

the complainant after the incident giving rise to this prosecution. Under the criminal rules, the court could have also ordered a bill of particulars "if it is satisfied that counsel has exhausted his discovery remedies under this rule or if it is satisfied that discovery would be ineffective to protect the rights of the defendant." M.R.Crim.P. 16(c)(2). The bill of particulars, if sought and made available, would have functioned to enable the defendant to prepare an adequate defense and avoid prejudicial surprise at trial. *See State v. Cote*, Me., 444 A.2d 34, 36 (1982). There is no indication that the defendant petitioned the court to issue such an order. *See Crocker*, 435 A.2d at 68. The defendant has thus not established that the general allegation in the indictment of a "sexual act" impermissibly prevented the preparation of an adequate defense. *Cf. State v. Maier*, Me., 423 A.2d 235, 239–40 (1980) (defendant must demonstrate on appeal prejudicial effect of variance in indictment).

The failure of an indictment to identify whether the accused is charged as a principal or accessory does not render the instrument inadequate. *See Allison*, 427 A.2d at 474 (indictment sufficient if it charges accessory as principal). To this extent, then, this indictment falls within the bounds of constitutionally acceptable pleading. Again, we note that the defendant had further opportunity, either through more discovery or a request for a bill of particulars, to dispel any lingering doubt as to the capacity in which he was charged.

### III.

■ The defendant claims finally that the evidence was inherently improbable and insufficient to support the jury's verdict. After carefully reviewing the evidence presented at trial and resolving any factual questions in favor of the verdict, *see State v. Sanborn*, Me., 440 A.2d 1056, 1057 (1982), we determine that the jury could have concluded beyond a reasonable doubt that the defendant was guilty. *See State v. Lagasse*, Me., 410 A.2d 537, 542 (1980).

The entry is:

Judgment affirmed.

All concurring.