STATE of Maine

v.

**Warren BRASSLETT.**

Supreme Judicial Court of Maine.

Argued June 14, 1982.

Decided Oct. 19, 1982.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty., (orally), Bangor, for plaintiff.

Gross, Minsky, Mogul & Singal, P.A., George Z. Singal, Carl F. Rella (orally), Bangor, for defendant.

Before McKUSICK, C.J., NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

Following a jury trial in Superior Court, Penobscot County, Warren Brasslett was convicted on two counts of theft charged in the indictment as theft by unauthorized taking pursuant to 17–A M.R.S.A. § 353. On appeal, the defendant argues that the Superior Court committed reversible error, 1) in denying his motion for judgment of acquittal on the grounds (a) that there was a variance between the indictment and the proof respecting the ownership of the property involved and (b) that the State failed to prove theft by unauthorized taking as alleged; 2) in denying his motion at trial for a continuance and for a mistrial; and 3) in refusing to instruct the jury that proof of theft by deception was insufficient to support a conviction of theft by unauthor-

ized taking. We affirm the judgments of conviction.

From the evidence presented at trial, the jury could have properly found the following facts. On September 3, 1980, Warren Brasslett picked up Carl Sprague, his cousin, and Sprague's wife, Deborah, in a pickup truck. When the trio got into the truck, Brasslett said: "Let's go rent some wood splitters." The defendant had been "hounding" Sprague about renting the wood splitters so that the defendant could sell them. Brasslett also suggested that they get a false driver's license at the motor vehicle registration office.

After obtaining the driver's license and placing "borrowed" license plates on Brasslett's truck, the three of them were on their way to the Agway store in Brewer. Carl and Deborah entered the store and rented a wood splitter. The defendant remained in the truck. Mr. Sprague identified himself as Herbert Barnett. Deborah Sprague signed the rental agreement as Patricia Sprague, the name on the false driver's license. The rental agreement required the return of the property the next morning. The three individuals then took the wood splitter to another person's house in Winterport.

Brasslett and the Spragues then returned to Brewer where they rented another wood splitter, but this time at Taylor Rental Center, following the same procedure which had proved successful earlier that morning. That wood splitter was also taken to the house in Winterport. Subsequently, Brasslett gave the Spragues $125.00. The Spragues never returned the wood splitters.

### 1A. *Variance*

We reject the defendant's argument that the trial court erred in denying his motion for acquittal on count I of the indictment. His articulated reason for such relief pointed out to the court below that Taylor Rental Co., the alleged owner of the wood splitter, did not have a property interest in the stolen goods, since the wood splitter belonged to one David Adams who did business as Taylor Rental Center. As a matter of evidentiary fact, the Taylor Rental Cor-

poration is a franchisor located in Massachusetts, which had no property interest in Taylor Rental Center of Brewer, nor in its wood splitters.

Whatever may have been the style given to the defendant's objection for which he asserted the right to have an acquittal of the particular charge, in essence it consisted of a claim that there existed a fatal variance between the allegation in the indictment of the theft of the property of Taylor Rental Co., and the proof at trial, since in fact the State's proof was theft of the property of Adams, doing business as Taylor Rental Center. We find no merit in the defendant's argument.

An indictment, in our Anglo-Saxon criminal jurisprudence, implies the finding of a grand jury (see *Grin v. Shine,* 187 U.S. 181, 192, 23 S.Ct. 98, 103, 47 L.Ed. 130 (1902)); it is the sworn accusation in writing, presented by the grand jury to a court of competent jurisdiction, charging the accused person with a particular crime. *See Salvail v. Sharkey,* 108 R.I. 63, 271 A.2d 814, 817 (1970). As mandated by Rule 7(c) of the Maine Rules of Criminal Procedure, the indictment *shall be* "a plain, concise and definite written statement of the *essential facts* constituting the offense charged." (Emphasis provided) The purported object of an indictment in satisfying the constitutional requirements respecting the rights of persons accused of crime provided by our State Constitution in Article I, Sections 6 and 8, must be to fairly apprise the defendant of the exact offense of which he is accused so that he may properly prepare his defense to the charge and, if convicted or acquitted, may make use of the judgment as a basis for a plea of former jeopardy. *State v. Hebert,* Me., 448 A.2d 322 (1982); *State v. Pierce,* Me., 438 A.2d 247, 250 (1981); *State v. Charette,* 159 Me. 124, 126, 188 A.2d 898, 900 (1963).

Brasslett does not contend that the indictment was not sufficiently specific so as to enable him to prepare his defense. He claims, rather, that the inaccurate allegation of ownership in the indictment, *i.e.*

Taylor Rental Co. instead of Taylor Rental Center, let alone David Adams doing business as Taylor Rental Center, exposes him in the future to double jeopardy, since there are franchises which do business under the name of "Taylor Rental Company."

■ The name of the owner of stolen property does not constitute an essential factual element of the offense of theft; it is the fact that the stolen property is the property of one other than the defendant which is a necessary ingredient of this charge. One cannot steal from one's self. The owner's name must necessarily be stated in an indictment *primarily as a description* for the purpose of identification of the property stolen and to show ownership in a person or persons other than the accused. *State v. Kimball,* Me., 359 A.2d 305, 307 (1976); *State v. Small,* 156 Me. 10, 13, 157 A.2d 874, 876 (1960).

■ The primary purposes of the requirement that ownership be alleged in larceny indictments are to inform the accused of the exact offense charged, to enable him to prepare for trial and to plead an acquittal or conviction in bar of a subsequent prosecution for the same offense. *State v. Small, supra,* 156 Me. at 13, 157 A.2d at 876. When allegation and proof of ownership are so interrelated as to allow those purposes to be protected and realized, a harmless variance will not vitiate the indictment, nor defeat a conviction thereunder. *See People v. Harden,* 42 Ill.2d 301, 247 N.E.2d 404, 406 (1969).

Neither the indictment nor the testimony left any reasonable doubt, nor was the defendant misled in any way by the fact, that the particular wood splitter involved in this accusation of theft belonged to the mercantile establishment in Brewer operated by David Adams under the business name of Taylor Rental Center, though the indictment was imprecise in alleging the owner's name as Taylor Rental Co. It is true that the term "company," identified by the contraction "Co.," in common parlance may be

interpreted as referring to a corporate entity, but it is also commonly used in the commercial world to designate the business of an individual or partnership doing business under an assumed trade name. As a general rule, in the absence of statute, an individual or partnership may adopt any name it sees fit under which to transact a legitimate business. *Lipman v. Thomas,* 143 Me. 270, 272, 61 A.2d 130, 131 (1948). *See* 31 M.R.S.A. § 2.

■ Furthermore, we said in *State v. Hebert, supra,* that the scope of jeopardy created by an indictment is as broad as that indictment may be fairly read. If the allegations in a subsequent prosecution describe an offense which comes within the scope of the charging document of a prior prosecution, then the defendant may successfully raise the defense of former jeopardy in the subsequent proceedings. Here, the marginal variance in the trade name of the alleged owner of the wood splitter would in no way impair the defendant's constitutional privilege of immunity from double jeopardy. The indictment was sufficiently specific as to its allegation of ownership of the stolen property to enable the defendant to adequately prepare his defense and to protect him from subsequent prosecution for the same offense. *State v. Smith,* Me., 435 A.2d 408, 409 (1981).

### 1B. *Proof of theft by deception to support conviction of theft by unauthorized taking*

The indictment, in each count, charges Warren Brasslett with the crime of theft in that he

did obtain or exercise unauthorized control over the property of [name of owner], to wit, personal property of a value [value stated] with intent to deprive said [owner] thereof.

This charge literally describes the commission of theft under section 353 of 17–A M.R.S.A., entitled: Theft by unauthorized taking or transfer.[1] In his motion for ac-

---

1. 17–A M.R.S.A. § 353 provides in full as follows:

1. A person is guilty of theft if he obtains or exercises unauthorized control over the proper-

quittal, the defendant argues that the State failed to prove the specific charge alleged in the indictment, asserting that the State's proof was to the effect that the defendant had obtained control of these wood splitters with the express authority of the owners thereof and had the right under the contract to exercise control over them for twenty-four hours. The defendant suggests that his exercise of control over these wood splitters did not become "unauthorized" within the meaning of section 353 until he disposed of them in Winterport, a town in Waldo County outside the jurisdiction of a Penobscot County Grand Jury. We do not agree.

It is true that the State's proof of the theft was to the effect that the defendant obtained and exercised control over these wood splitters as a result of the deception which he and his co-conspirators had perpetrated in Brewer, a city within the territorial jurisdiction of the Penobscot County Grand Jury. *True also* is the fact that our criminal code specifically makes it a crime to commit theft by deception.[2]

■ But, we stated in *State v. Rand,* Me., 430 A.2d 808, 815 (1981), that the Maine Criminal Code, as provided in 17–A M.R.S.A. § 351, by consolidating the several different manners of committing the common law crime of larceny into a single crime of theft, merely effected a procedural mechanism to avoid insubstantial variances and prevent the possibility of a miscarriage of justice by virtue of a variance in that respect between the charge and the proof. Section 351 of 17–A M.R.S.A., indeed, provides that

[a]n accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the information or indictment.

Thus, a specific allegation of theft by unauthorized taking pursuant to 17–A M.R.S.A. § 353, as in the instant case, will support evidentiary proof of theft in any other manner described by the several separate provisions of the Code relating to the crime of theft. *State v. Rand, supra,* at 815. We did add the comment in *Rand,* however, that the consolidation was not intended to bring about a conceptual change of substance in criminology; in other words, common law concepts of criminal conduct would persist. Section 351 so confirms by providing that

[c]onduct denominated theft in this chapter constitutes a single crime embracing the separate crimes such as those heretofore known as larceny, larceny by trick, larceny by bailee, embezzlement, false pretenses, extortion, blackmail, shoplifting and receiving stolen property.

The consolidation seeks to play down the historical distinctions at common law between the various types of offenses involving the misappropriation of property. The major objective in this area has been to define the crime broadly enough to include all vaguely separated theft offenses, so that evidence of appropriation by any of the forbidden methods will support the charge. *See State v. Saylor,* 228 Kan. 498, 618 P.2d 1166, 1170 (1980); *People v. Muskgrave,* 60 Ill.App.3d 742, 18 Ill.Dec. 306, 377 N.E.2d

ty of another with intent to deprive him thereof.

2. As used in this section, "exercises unauthorized control" *includes but is not necessarily limited to* conduct heretofore defined or known as common law larceny by trespassory taking, larceny by conversion, larceny by bailee and embezzlement. (Emphasis provided)

2. 17–A M.R.S.A. § 354 provides in pertinent part as follows:

1. A person is guilty of theft if he obtains or exercises control over property of another as a result of deception and with an intention to deprive him thereof.

2. For purposes of this section, deception occurs when a person intentionally:

A. Creates ... an impression which is false and which that person does not believe to be true, including false impressions as to .... intention or other state of mind. Provided, however, that an intention not to perform a promise ... shall not be inferred from the fact alone that the promise was not performed.

. . . . .

3. It is no defense to a prosecution under this section ... that the person deceived acted unreasonably in relying on the deception.

595, 597 (1978); Ballou, *Property Offenses,* 28 Me.L.Rev. 13, at 19 (1976); LaFave & Scott, *Handbook on Criminal Law* § 91 at 677–78 (1972).

■ The comprehensive consolidation permitted by 17–A M.R.S.A. § 351 gives recognition to the principle that it is not necessary in criminal pleading to make averments in indictments or complaints to the degree they become a recital of the evidence in proof of the charge. *See State v. Charette,* 159 Me. 124, 127, 188 A.2d 898, 900 (1963); *State v. Papalos,* 150 Me. 46, 57, 103 A.2d 511, 516 (1954).

Furthermore, section 353, in defining "exercises unauthorized control" under that particular section, expressly extended its meaning to include "conduct heretofore defined or known as common law larceny by 'trespassory taking,'" etc. Larceny by trespassory taking at common law includes larceny by deception, trick or fraud. In *State v. Humphrey,* 32 Vt. 569, at 571–72 (1860), the Court stated:

> Where the consent of the owner to the taking has been obtained by fraud and deception by inducing him to believe that the taker wishes to obtain the property for an honest and temporary purpose, when in fact the design is to wholly deprive him of it, and where no consent would have been given if the real purpose had been disclosed, this is not regarded as any assent by the owner, and the taking for the purpose and design of the taker is against the will of the owner. A consent thus obtained is wholly nugatory, and the taking may be regarded as tortious, and the taker a trespasser, both civilly and criminally.

The Vermont court went on to note that actual disposition or sale of the property was unnecessary in order to complete the crime so long as the taker kept the property for his own use. *Id.* at 574.

■ Thus, under common law concepts, a trespassory taking took place even though the initial possession of the alleged stolen property was obtained through the actual consent of the owner, if that consent was secured through deception, trick or fraudu-lent purpose. The common law viewed the deceptor, trickster or defrauder as a trespasser from the beginning, commonly stated a trespasser ab initio. The *Humphrey* court considered the doctrine as prevailing universally in England and in the several states, and so imbedded in the criminal jurisprudence of the times as to be laid down as the rule in every elementary book on criminal law.

The Maine court in 1868 did voice this universal common law theory that in contemplation of law, when property is obtained with a fraudulent purpose, the taker is a wrongdoer from the beginning, his wrongful act is continuous and, when to that act the taker subsequently adds the felonious intent to deprive the owner of his property permanently and to convert it to his own use without the consent of the owner, the crime of larceny is complete. "In such case it is not necessary that the felonious intent should exist at the time of the original taking to constitute larceny, the wrongful taking being all the while continuous." *State v. Coombs,* 55 Me. 477, 481 (1868). This doctrine has been reaffirmed in *State v. Boisvert,* Me., 236 A.2d 419 (1967); *State v. McKeough,* Me., 300 A.2d 755, 757, n. 4 (1973); *State v. Dematteo,* Me., 308 A.2d 579, 580 (1973). *See also State v. Gordon,* Me., 321 A.2d 352, 357–58 (1974).

We conclude that the Maine Criminal Code, in its structural arrangement of separate sections defining the crime of theft by the various and diversified manners in which the crime can be committed, did not purport to displace the common law concept of "trespassory taking." To the contrary, it expressly adopted the same by its reference inclusion incorporated in section 353 and, thus, by so doing, must be viewed as importing into the structural scheme of treatment respecting the crime of theft some overlap of the several sections. We do note that the Code does not address the concept of exclusivity of the several definitional provisions and also notice that violation of either section 353 or 354 subjects one to the same punishment.

 The evidence in the instant case would have supported a conviction for theft by deception, since the defendant obtained the wood splitters by deceitful means in creating in the owners a false impression that the promise to return them as agreed would be fulfilled while at the time he did not intend to perform; but, because the acquisition of another's property by deceitful means is unlawful, it also constitutes an unlawful taking, and, thus, no fatal variance exists between a charge of theft by unlawful taking and proof of the charge by evidence of taking through deceitful means with the concomitant intention of depriving the owner of his property. *See Change v. State,* 156 Ga.App. 316, 274 S.E.2d 711 (1980).

## 2. *Denial of motions for continuance or mistrial*

 The flexibility provided by section 351 permitting an accusation of theft to be proved by evidence that it was committed in any manner that would be theft under the several sections pertaining to the crime of theft, notwithstanding the specification of a different manner in the charging document, is not absolute. Protection is afforded the accused, in that the reference section empowers the court

> to ensure a fair trial by granting a continuance or other appropriate relief if the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

We do recognize that, by reason of the interchangeable adaptability of the criminal pleading in the charge of theft to the proof of any of the several modes of committing the crime as permitted by section 351, greater awareness and extrasensitivity on the part of the State and the trial court should be brought to bear, especially where the accusation is couched in the broad terminology of theft by unauthorized taking, so that the accused will not be unduly prejudiced in the preparation of his defense by lack of fair notice or by surprise. In the instant case, however, the State gave notice in the caption of the indictment that it would be proceeding under Section 353 as required by Rule 7(c), M.R.Crim.P. and there was no shift in its position during the course of the trial. The defendant made no offer of proof at the trial court level, nor before this court, how he may have been prejudiced by the State's proof of theft by deception. The defendant's bald assertion of surprise because of the variance between the allegations of the indictment charging theft by unauthorized taking and the proof of facts showing theft by deception in and of itself does not bring him within the relief exception of section 351. The defendant is presumed to know the law. *See State v. Viger,* Me., 392 A.2d 1080, 1085–86 (1978).

In conclusion, there was no error in the Superior Court's denial of the defendant's motions for continuance or for mistrial.

Finally, the defendant's claim of error in relation to the charge to the jury was fully considered by us and found to be without merit.

The entry will be:

Appeal denied.

Judgments of conviction affirmed.

McKUSICK, C.J., NICHOLS, VIOLETTE and WATHEN, JJ., concur.

CARTER, Justice, dissenting in part

I concur with the majority on issues (1B), (2), and (3). At 891. I dissent on issue (1A). In this case, the defendant specifically raises a question of fatal variance between the allegations of the indictment and the proof adduced at trial. He claims that the variance constitutes reversible error because the variance deprives him of the protection of the constitutional guarantee against double jeopardy. Me. Const. art. I, § 8; U.S. Const., amend. V. The variance noted exists between the allegations of the indictment that the property involved in the alleged offense was "the property of *Taylor Rental Co.*" (emphasis added) and the proof at trial that the property was owned by David Adams and that he did business as *Taylor Rental Center.*

The protection against double jeopardy, as secured by the Federal Constitution, is applicable in state cases based on the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Gwinn v. Deane,* 613 F.2d 1 (1st Cir.1980). In *State v. Wing,* Me., 426 A.2d 1375, 1381–82 (1981) (Carter, J., dissenting), I wrote at length concerning the double jeopardy issue to establish two principal points: first, the federal double jeopardy doctrine requires that "the indictment must be sufficiently precise in identifying the crime charged that the indictment *itself* will be a guard against a subsequent trial on the same charge," *Id.* at 1381 (emphasis added) (citations omitted); second, a fatal variance occurs in proceedings under review on appeal when the proof at trial resulted in conviction of an offense but subsequent reprosecution would not be prevented by a facial reading of the indictment employed in that prosecution. *Id.* at 1382. Applying these points to this case, I think it apparent that the variance here is fatal. The proposition need only be stated to demonstrate the fatal quality of the variance: the defendant was charged with illegally obtaining possession of property of "Taylor Rental Co."; the defendant was proved at trial to have illegally obtained possession of property of "David Adams." The allegations of the indictment alone would not identify the offense actually proved against the defendant as one for which he could not again be prosecuted on an indictment charging that defendant illegally obtained "the property of David Adams."

After *Wing,* this Court took the path suggested by Roberts, J. in *Wing, Id.* at 1378 (Roberts, J., concurring) in deciding *State v. Hebert,* Me., 448 A.2d 322 (1982). In *Hebert,* we held that under the liberal rules of modern criminal pleading, "[t]he scope of jeopardy created by an indictment

is therefore as broad as that indictment may be fairly read." *Hebert,* 448 A.2d at 326. On that principle, we held that an indictment for Gross Sexual Misconduct, *see* 17–A M.R.S.A. § 253 (1980), which alleged compelling another to engage in "a sexual act," afforded sufficient double jeopardy protection as to a proved offense involving an oral-genital act because the indictment, ·when pleaded in. bar of a subsequent prosecution, must be read broadly enough to include *any sexual act* falling within the components of time, place, and identity of the victim in that indictment. The indictment would, therefore, protect against any subsequent prosecution for *any* sexual act occurring at the same time and place and involving the same victim. We noted in *Hebert:* "[t]hus, if the allegations in one prosecution describe an offense which is shown to be within the scope of the charging allegations of a prior prosecution, then the defendant may successfully raise a defense of former jeopardy to the subsequent proceedings." *Hebert,* 448 A.2d at 326.

The majority relies on *Hebert* in deciding this case. Majority opinion at [at 893]. In my view, the rationale of that case will not save this prosecution because there is no legitimate basis on which the indictment in this case can be read to encompass the offense of illegally obtaining possession of property of David Adams. If the defendant were again charged by a properly drawn indictment with that offense, *the indictment* in this case would provide him with no protection against double jeopardy. The variance in this case is, therefore, fatal. Consequently, the remaining portion of the majority's rationale on the point can not properly result in an affirmance of the conviction.[1]

---

1. I have struggled, unsuccessfully, to concur with the majority concerning this point on the basis of *stare decisis,* specifically the rule articulated in *State v. Damon,* Me., 395 A.2d 121, 122 (1978), *State v. Nappi,* 369 A.2d 230, 232 (1977), and *State v. Kimball,* Me., 359 A.2d 305,

307 (1976), that the record at trial and the appellate opinion, in addition to the indictment, provide substance to the double jeopardy bar. In my dissent in *Wing,* joined by no other member of the Court, I stated my critique of that rule. *Wing,* 426 A.2d at 1381–83.